**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **SAN BERNARDINO COUNTY ON BEHALF OF ARROWHEAD REGIONAL MEDICAL CENTER**<br>400 N Pepper Ave.<br>Colton, CA 92324-1801<br><br>**AMERICAN HOSPITAL MANAGEMENT CORPORATION dba MAD RIVER COMMUNITY HOSPITAL**<br>3800 Janes Rd.<br>Arcata, CA 95521-4742<br><br>**ANTELOPE VALLEY HEALTHCARE DISTRICT dba ANTELOPE VALLEY MEDICAL CENTER**<br>1600 West Ave. J<br>Lancaster, CA 93534<br><br>CASA COLINA HOSPITAL AND CENTERS FOR HEALTHCARE dba CASA COLINA HOSPITAL<br>255 E. Bonita Ave.<br>Pomona, CA  91767<br><br>CHA HOLLYWOOD MEDICAL CENTER, L.P. DBA HOLLYWOOD PRESBYTERIAN MEDICAL CENTER<br>1300 North Vermont Ave.<br>Los Angeles, CA 90027<br><br>CHCM, INC. dba COSTA MESA MEDICAL CENTER HOSPITAL fka COLLEGE HOSPITAL COSTA MESA<br>301 Victoria St.<br>Costa Mesa, CA  92627<br><br>CHINESE HOSPITAL ASSOCIATION dba CHINESE HOSPITAL, a non-profit public benefit corporation<br>845 Jackson St.<br>San Francisco, CA 94133<br><br>CHLB LLC dba COLLEGE MEDICAL CENTER<br>2776 Pacific Ave.<br>Long Beach, CA 90806-2613<br><br>CITY OF EL CENTRO dba EL CENTRO REGIONAL MEDICAL CENTER<br>1415 Ross Ave. | **Case No.** |

El Centro, CA 92243

COMMUNITY HOSPITAL OF THE
MONTEREY PENINSULA
23625 Holman Hwy.
Monterey, CA 93940-5902

COMMUNITY MEMORIAL HEALTH
SYSTEM dba COMMUNITY MEMORIAL
HOSPITAL SAN BUENAVENTURA dba
COMMUNITY MEMORIAL HEALTHCARE
147 N. Brent St.
Ventura, CA 93003

COUNTY OF MONTEREY dba NATIVIDAD
MEDICAL CENTER
1441 Constitution Blvd.
Salinas, CA  93906

COUNTY OF RIVERSIDE dba RIVERSIDE
UNIVERSITY HEALTH SYSTEM - MEDICAL
CENTER
26520 Cactus Ave.
Moreno Valley, CA 92555-3927

COUNTY OF SAN MATEO dba SAN MATEO
MEDICAL CENTER
222 W 39th Ave.
San Mateo, CA 94403

COUNTY OF VENTURA dba VENTURA
COUNTY MEDICAL CENTER
300 Hillmont Ave.
Ventura, CA 93003

DAMERON HOSPITAL ASSOCIATION dba
DAMERON HOSPITAL
525 W. Acacia St.
Stockton, CA 95203

DEANCO HEALTHCARE, LLC DBA MISSION
COMMUNITY HOSPITAL
8447 Wilshire Blvd.
Beverly Hills, CA  90211

EISENHOWER MEDICAL CENTER dba
EISENHOWER HEALTH
39000 Bob Hope Dr.
Rancho Mirage, CA 92270-3221

EL CAMINO HOSPITAL dba EL CAMINO
HEALTH
2500 Grant Rd.

Mountain View, CA 9404

ENLOE MEDICAL CENTER
1531 Esplanade
Chico, CA 95926

GOOD SAMARITAN HOSPITAL, LP
901 Olive Dr.
Bakersfield, CA 93308

HAYWARD SISTERS HOSPITAL dba ST.
ROSE HOSPITAL
27200 Calaroga Ave.
Hayward, CA 94545

HENRY MAYO NEWHALL MEMORIAL
HOSPITAL dba HENRY MAYO NEWHALL
HOSPITAL
23845 Mcbean Pkwy.
Valencia, CA 91355-2083

KAWEAH DELTA HEALTH CARE DISTRICT
DBA KAWEAH HEALTH MEDICAL CENTER
400 W Mineral King Ave.
Visalia, CA 93291-6237

KERN COUNTY HOSPITAL AUTHORITY
1700 Mount Vernon Ave.
Bakersfield, CA 93306

LOMPOC VALLEY MEDICAL CENTER
1515 E. Ocean Ave.
Lompoc, CA 93436

MARIN GENERAL HOSPITAL dba
MARINHEALTH MEDICAL CENTER
250 Bon Air Rd.
Greenbrae, CA 94904

MARSHALL MEDICAL CENTER
1100 Marshall Way
Placerville, CA 95667

MARTIN LUTHER KING JR.-LOS ANGELES
(MLK-LA) HEALTHCARE CORPORATION
dba MARTIN LUTHER KING, JR.
COMMUNITY HOSPITAL
1680 E. 120th St.
Los Angeles, CA 90059

NORTHBAY HEALTHCARE GROUP dba
NORTHBAY MEDICAL CENTER
1200 B. Gale Wilson Blvd.

Fairfield, CA 94533

OAK VALLEY HOSPITAL DISTRICT
350 South Oak Ave.
Oakdale, CA 95361

OROVILLE HOSPITAL
2767 Olive Hwy.
Oroville, CA  95966

PACIFICA OF THE VALLEY CORPORATION
dba PACIFICA HOSPITAL OF THE VALLEY
9449 San Fernando Rd.
Sun Valley CA 91352

PAJARO VALLEY HEALTH CARE DISTRICT
HOSPITAL CORPORATION dba
WATSONVILLE COMMUNITY HOSPITAL
75 Nielson St.
Watsonville, CA 95076-2468

PIONEERS MEMORIAL HEALTHCARE
DISTRICT
207 W. Legion Rd.
Brawley, CA 92227

POMONA VALLEY HOSPITAL MEDICAL
CENTER
1798 N Garey Ave.
Pomona, CA 91767-2918

REDLANDS COMMUNITY HOSPITAL
350 Terracina Blvd.
Redlands, CA 92373

SAINT AGNES MEDICAL CENTER
1303 E. Herndon Ave.
Fresno, CA 93720

SALINAS VALLEY MEMORIAL
HEALTHCARE SYSTEM dba SALINAS
VALLEY HEALTH MEDICAL CENTER
450 E Romie Ln.
Salinas, CA 93901-4029

SAN ANTONIO REGIONAL HOSPITAL INC.
dba SAN ANTONIO REGIONAL HOSPITAL
999 San Bernardino Rd.
Upland, CA 91786

SAN GORGONIO MEMORIAL HOSPITAL
600 N Highland Springs Ave.
Banning, CA 92220-3046

SIERRA VIEW LOCAL HEALTH CARE
DISTRICT dba SIERRA VIEW MEDICAL
CENTER
465 W. Putnam Ave.
Porterville, CA  93265

SONOMA VALLEY HEALTH CARE
DISTRICT dba SONOMA VALLEY HOSPITAL
347 Andrieux St.
Sonoma, CA 95476

THE COUNTY OF SANTA CLARA dba
SANTA CLARA VALLEY MEDICAL CENTER
dba O'CONNOR HOSPITAL dba St. LOUISE
REGIONAL HOSPITAL
70 W. Hedding St.
San Jose, CA 95110-1705

TRI-CITY HEALTHCARE DISTRICT dba TRI-
CITY MEDICAL CENTER
4200 Vista Way
Oceanside, CA  92056

VALLEY PRESBYTERIAN HOSPITAL
15107 Vanowen St.
Van Nuys, CA 91405-4542

WASHINGTON TOWNSHIP HEALTH CARE
DISTRICT dba WASHINGTON HOSPITAL and
WASHINGTON HOSPITAL HEALTHCARE
SYSTEM
2000 Mowry Ave.
Fremont, CA 94538

**AHMC ANAHEIM REGIONAL MEDICAL
CENTER LP dba ANAHEIM REGIONAL
MEDICAL CENTER**
1111 West La Palma Ave.
Anaheim, CA 92801-2881

AHMC GARFIELD MEDICAL CENTER LP dba
GARFIELD MEDICAL CENTER
525 N. Garfield Ave.
Monterey Park, CA 91754-1202

AHMC GREATER EL MONTE COMMUNITY
HOSPITAL LP dba GREATER EL MONTE
COMMUNITY HOSPITAL
1701 Santa Anita Ave.
South El Monte, CA 91733-3482

AHMC MONTEREY PARK HOSPITAL LP dba

MONTEREY PARK HOSPITAL
900 S. Atlantic Blvd.
Monterey Park, CA 91754-4716

AHMC SAN GABRIEL VALLEY MEDICAL
CENTER LP dba SAN GABRIEL VALLEY
MEDICAL CENTER
438 W. Las Tunas Dr.
San Gabriel, CA 91776-1216

AHMC SETON MEDICAL CENTER LLC dba
AHMC SETON MEDICAL CENTER, and
AHMC SETON MEDICAL CENTER
COASTSIDE
1850 Sullivan Ave., Ste 400
Daly City, CA 94015-2200

AHMC WHITTIER HOSPITAL MEDICAL
CENTER LP dba WHITTIER HOSPITAL
MEDICAL CENTER
9080 Colima Rd.
Whittier, CA 90605-1600

ALHAMBRA HOSPITAL MEDICAL CENTER
L.P. dba ALHAMBRA HOSPITAL MEDICAL
CENTER
100 S Raymond Ave.
Alhambra, CA 91801-3166

DOCTORS HOSPITAL OF RIVERSIDE LLC
dba PARKVIEW COMMUNITY HOSPITAL
MEDICAL CENTER
3865 Jackson St.
Riverside, CA 92503-3919

**CHHP HOLDINGS II, LLC dba
COMMUNITY HOSPITAL OF
HUNTINGTON PARK**
2623 E Slauson Ave.
Huntington Park, CA 90255-2926

CPH HOSPITAL MANAGEMENT LLC dba
COAST PLAZA HOSPITAL
13100 Studebaker Rd.
Norwalk, CA 90650-2531

ELADH LP dba EAST LOS ANGELES
DOCTORS HOSPITAL
4060 Whittier Blvd.
Los Angeles, CA 90023-2526

GARDENA HOSPITAL, L.P. dba MEMORIAL
HOSPITAL OF GARDENA

1145 W Redondo Beach Blvd.
Gardena, CA 90247-3511

**CEDARS-SINAI MARINA HOSPITAL**
4650 Lincoln Blvd.
Marina Del Rey, CA 90292-6306

CEDARS-SINAI MEDICAL CENTER
8700 Beverly Blvd.
Los Angeles, CA 90048-1804

PASADENA HOSPITAL ASSOCIATION, LTD.
dba HUNTINGTON HOSPITAL
100 W California Blvd.
Pasadena, CA 91105-3010

TORRANCE MEMORIAL MEDICAL CENTER
3330 Lomita Blvd.
Torrance, CA  90505-5002

**FRESNO COMMUNITY HOSPITAL AND
MEDICAL CENTER dba CLOVIS
COMMUNITY MEDICAL CENTER**
2755 Herndon Ave.
Clovis, CA 93611-6800

FRESNO COMMUNITY HOSPITAL
AND MEDICAL CENTER dba COMMUNITY
REGIONAL MEDICAL CENTER
2823 Fresno St.
Fresno, CA 93721-1324

**GOLETA VALLEY COTTAGE HOSPITAL**
351 S Patterson Ave.
Santa Barbara, CA 93111-2403

SANTA BARBARA COTTAGE HOSPITAL
400 W Pueblo St.
Santa Barbara, CA 93105-4353

**BAKERSFIELD MEMORIAL HOSPITAL**
420 34th St.
Bakersfield, CA 93301-2237

COMMUNITY HOSPITAL OF SAN
BERNARDINO
1805 Medical Center Dr.
San Bernardino, CA 92411-1214

DIGNITY COMMUNITY CARE dba
CALIFORNIA HOSPITAL MEDICAL CENTER
1401 S Grand Ave.
Los Angeles, CA 90015-3010

DIGNITY COMMUNITY CARE dba
CHANDLER REGIONAL MEDICAL CENTER
1955 W Frye Rd.
Chandler, AZ 85224-6282

DIGNITY COMMUNITY CARE dba FRENCH
HOSPITAL MEDICAL CENTER
1911 Johnson Ave.
San Luis Obispo, CA 93401-4131

DIGNITY COMMUNITY CARE dba
GLENDALE MEMORIAL HOSPITAL AND
HEALTH CENTER
1420 S Central Ave.
Glendale, CA 91204-2508

DIGNITY COMMUNITY CARE dba
METHODIST HOSPITAL OF SACRAMENTO
7500 Hospital Dr.
Sacramento, CA 95823-5403

DIGNITY COMMUNITY CARE dba
NORTHRIDGE HOSPITAL MEDICAL
CENTER
18300 Roscoe Blvd.
Northridge, CA 91325-4105

DIGNITY COMMUNITY CARE dba SEQUOIA
HOSPITAL
170 Alameda De Las Pulgas
Redwood City, CA 94062-2751

DIGNITY COMMUNITY CARE dba
WOODLAND MEMORIAL HOSPITAL
1325 Cottonwood St.
Woodland, CA 95695-5131

DIGNITY HEALTH dba DOMINICAN
HOSPITAL
1555 Soquel Dr.
Santa Cruz, CA 95065-1705

DIGNITY HEALTH dba MARIAN REGIONAL
MEDICAL CENTER
1400 East Church St.
Santa Maria, CA 93454-5906

DIGNITY HEALTH dba MERCY GENERAL
HOSPITAL
4001 J St.
Sacramento, CA 95819-3626

DIGNITY HEALTH dba MERCY GILBERT
MEDICAL CENTER
3555 S Val Vista Dr.
Gilbert, AZ 85297-7323

DIGNITY HEALTH dba MERCY HOSPITAL
OF FOLSOM
1650 Creekside Dr.
Folsom, CA 95630-3400

DIGNITY HEALTH dba MERCY MEDICAL
CENTER
333 Mercy Ave.
Merced, CA 95340-8319

DIGNITY HEALTH dba MERCY MEDICAL
CENTER REDDING
2175 Rosaline Ave.
Redding, CA 96001-2509

DIGNITY HEALTH dba MERCY SAN JUAN
MEDICAL CENTER
6501 Coyle Ave.
Carmichael, CA 95608-0306

DIGNITY HEALTH dba ST BERNARDINE
MEDICAL CENTER
2101 North Waterman Ave.
San Bernardino, CA 92404-4836

DIGNITY HEALTH dba ST MARY MEDICAL
CENTER
1050 Linden Ave.
Long Beach, CA 90813-3321

DIGNITY HEALTH dba ST MARYS MEDICAL
CENTER
450 Stanyan St.
San Francisco, CA 94117-1079

DIGNITY HEALTH dba ST ROSE
DOMINICAN HOSPITALS - SAN MARTIN
CAMPUS
8280 W. Warm Springs Rd.
Las Vegas, NV 89113-3612

DIGNITY HEALTH dba ST. JOHN'S
REGIONAL MEDICAL CENTER
1600 N Rose Ave.
Oxnard, CA 93030

DIGNITY HEALTH dba ST. ROSE
DOMINICAN HOSPITAL - SIENA CAMPUS

3001 Saint Rose Pkwy.
Henderson, NV 89052-3839

DIGNITY HEALTH dba ST. ROSE
DOMINICAN HOSPITAL- ROSE DE LIMA
CAMPUS
102 East Lake Mead Pkwy.
Henderson, NV 89015-5575

DIGNITY HEALTH dba MERCY HOSPITAL
2215 Truxtun Ave.
Bakersfield, CA 93301

PORT CITY OPERATING COMPANY, LLC
dba ST JOSEPHS MEDICAL CENTER OF
STOCKTON
1800 N California St.
Stockton, CA 95204-6019

SAINT FRANCIS MEMORIAL HOSPITAL
900 Hyde St.
San Francisco, CA 94109-4806

SIERRA NEVADA MEMORIAL-MINERS
HOSPITAL dba SIERRA NEVADA
MEMORIAL HOSPITAL
155 Glasson Way
Grass Valley, CA 95945-5723

ST. JOSEPH'S HOSPITAL AND MEDICAL
CENTER
350 W Thomas Rd.
Phoenix, AZ 85013

AGH LAVEEN LLC dba DIGNITY HEALTH
ARIZONA GENERAL HOSPITAL
7171 S. 51st Ave.
Laveen, AZ 85339-2923

AGH MESA LLC dba DIGNITY HEALTH
ARIZONA GENERAL HOSPITAL
9130 E. Elliot Rd.
Mesa, AZ 85212-9675

ALEGENT CREIGHTON HEALTH dba CHI
HEALTH LAKESIDE
16901 Lakeside Hills Ct.
Omaha, NE 68130-2318

ALEGENT CREIGHTON HEALTH dba CHI
HEALTH MIDLANDS
11111 S 84th St.
Papillion, NE 68046-4122

ALEGENT HEALTH - BERGAN MERCY
HEALTH SYSTEM dba CHI HEALTH
CREIGHTON UNIVERSITY MEDICAL
CENTER - BERGAN MERCY
7500 Mercy Rd.
Omaha, NE 68124-2319

ALEGENT HEALTH - BERGAN MERCY
HEALTH SYSTEM dba CHI HEALTH MERCY
COUNCIL BLUFFS
800 Mercy Dr.
Council Bluffs, IA 51503-3128

ALEGENT HEALTH – IMMANUEL MEDICAL
CENTER dba CHI HEALTH IMMANUEL
6901 N 72nd St.
Omaha, NE 68122-1709

CATHOLIC HEALTH INITIATIVES
COLORADO dba CENTURA HEALTH
PENROSE ST. FRANCIS HEALTH SERVICES
2222 N. Nevada Ave.
Colorado Springs, CO 80907-6819

CATHOLIC HEALTH INITIATIVES
COLORADO dba CENTURA ST. ANTHONY
NORTH HOSPITAL
14300 Orchard Pkwy.
Westminster, CO 80023-9206

CATHOLIC HEALTH INITIATIVES
COLORADO dba CENTURA ST. ANTHONY
HOSPITAL
11600 W. 2nd Pl.
Lakewood, CO 80228-1527

CATHOLIC HEALTH INITIATIVES
COLORADO dba CENTURA ST. ANTHONY
SUMMIT HOSPITAL
340 Peak One Dr.
Frisco, CO 80443-5587

CATHOLIC HEALTH INITIATIVES
COLORADO dba CENTURA ST. MARY-
CORWIN HOSPITAL
1008 Minnequa Ave.
Pueblo, CO 81004-3733

CATHOLIC HEALTH INITIATIVES
COLORADO dba HOLY CROSS HOSPITAL –
DAVIS
1600 West Antelope Drive

Layton, Utah 84041

CATHOLIC HEALTH INITIATIVES
COLORADO dba HOLY CROSS HOSPITAL -
JORDAN VALLEY
3580 W 9000 South
West Jordan, Utah 84088

CATHOLIC HEALTH INITIATIVES
COLORADO dba HOLY CROSS HOSPITAL -
SALT LAKE
1050 East South Temple
Salt Lake City, Utah 84102-1507

CHI ST. LUKE'S HEALTH BAYLOR
COLLEGE OF MEDICINE MEDICAL
CENTER
6720 Bertner Ave., Ste. Mc1-266
Houston, TX 77030-2604

CHI ST. VINCENT HOSPITAL HOT SPRINGS
300 Werner St.
Hot Springs AR, 71913

FLAGET HEALTHCARE, INC. dba CHI SAINT
JOSEPH HEALTH - FLAGET MEMORIAL
HOSPITAL
4305 New Shepherdsville Rd.
Bardstown, KY 40004-9019

FRANCISCAN HEALTH SYSTEM dba ST.
ANTHONY HOSPITAL
11567 Canterwood Blvd. NW
Gig Harbor, WA 98332-5812

FRANCISCAN HEALTH SYSTEM dba ST.
CLARE HOSPITAL
11315 Bridgeport Way SW
Lakewood, WA 98499-3004

FRANCISCAN HEALTH SYSTEM dba ST.
FRANCIS HOSPITAL
34515 9th Ave. S.
Federal Way, WA 98003-6761

FRANCISCAN HEALTH SYSTEM dba ST.
JOSEPH MEDICAL CENTER
1717 S. J St.
Tacoma, WA 98405-4933

GOOD SAMARITAN HOSPITAL dba CHI
HEALTH GOOD SAMARITAN
10 E. 31St St.

Kearney, NE 68847-2926

HARRISON MEDICAL CENTER dba ST.
MICHAEL MEDICAL CENTER
1800 NW Myhre Rd.
Silverdale, WA 98383-7663

LONGMONT UNITED HOSPITAL dba
CENTURA LONGMONT UNITED HOSPITAL
1950 Mountain View Ave.
Longmont, CO 80501-3129

MEMORIAL HEALTH SYSTEM OF EAST
TEXAS dba CHI ST. LUKES MEMORIAL
LUFKIN
1201 W. Frank Ave.
Lufkin, TX 75904-3357

MEMORIAL HOSPITAL OF POLK COUNTY
dba CHI ST. LUKES HEALTH - MEMORIAL
LIVINGSTON
1717 Highway 59 Bypass
Livingston, TX 77351-1717

NEBRASKA HEART HOSPITAL dba CHI
HEALTH NEBRASKA HEART
7500 S. 91st St.
Lincoln, NE 68526-9437

ORTHOCOLORADO, LLC dba
ORTHOCOLORADO HOSPITAL AT ST.
ANTHONY MEDICAL CAMPUS
11650 West 2nd Pl.
Lakewood, CO 80228-1527

ORTHOPEDIC AND SURGICAL SPECIALTY
COMPANY, LLC dba ARIZONA SPECIALTY
HOSPITAL
2905 W. Warner Rd., Ste. 1
Chandler, AZ 85224-1674

PMC HOSPITAL, LLC dba ST. LUKE'S
PATIENTS MEDICAL CENTER
4600 East Sam Houston Pkwy. S.
Pasadena, TX 77505-3948

SAINT ELIZABETH REGIONAL MEDICAL
CENTER dba CHI HEALTH ST. ELIZABETH
555 S. 70th St.
Lincoln, NE 68510-2462

SAINT FRANCIS MEDICAL CENTER dba CHI
HEALTH ST. FRANCIS

2620 W. Faidley Ave.
Grand Island, NE 68803-4205

SAINT JOSEPH HEALTH SYSTEM INC dba
CHI SAINT JOSEPH EAST
150 N. Eagle Creek Dr.
Lexington, KY 40509-1805

SAINT JOSEPH HEALTH SYSTEM, INC. dba
CHI SAINT JOSEPH HOSPITAL
1 Saint Joseph Dr.
Lexington, KY 40504-3742

ST. ALEXIUS MEDICAL CENTER dba CHI ST.
ALEXIUS HEALTH
900 E Broadway Ave.
Bismarck, ND 58501-4520

ST. ANNE HOSPITAL fka HIGHLINE
MEDICAL CENTER
16251 Sylvester Rd., SW
Burien, WA 98166

ST. JOSEPH REGIONAL HEALTH CENTER
dba CHI ST. JOSEPH HEALTH REGIONAL
HOSPITAL
2801 Franciscan Dr.
Bryan, TX 77802-2544

ST. LUKE'S COMMUNITY HEALTH
SERVICES dba ST. LUKES THE
WOODLANDS HOSPITAL
17200 St Lukes Way
The Woodlands, TX 77384-8007

ST. LUKE'S HOSPITAL AT THE VINTAGE
dba ST. LUKES HOSPITAL AT THE VINTAGE
20171 Chasewood Park Dr.
Houston, TX 77070-1437

ST. LUKE'S LAKESIDE HOSPITAL, LLC dba
ST. LUKE'S LAKESIDE HOSPITAL
17400 St Lukes Way
The Woodlands, TX 77384-8036

ST. LUKES COMMUNITY DEVELOPMENT
CORPORATION - SUGAR LAND dba ST.
LUKE'S SUGAR LAND HOSPITAL
1317 Lake Pointe Pkwy.
Sugar Land, TX 77478-3997

ST. VINCENT INFIRMARY MEDICAL
CENTER dba CHI ST. VINCENT INFIRMARY

2 Saint Vincent Cir., Ste. 120
Little Rock, AR 72205-5406

THE COMMUNITY HOSPITAL OF
BRAZOSPORT dba CHI ST. LUKE'S HEALTH
BRAZOSPORT
100 Medical Dr.
Lake Jackson, TX 77566-5674

THE GOOD SAMARITAN HOSPITAL OF
CINCINNATI, OHIO dba GOOD SAMARITAN
HOSPITAL
375 Dixmyth Ave.
Cincinnati, OH 45220-2475

VIRGINIA MASON MEDICAL CENTER dba
VIRGINIA MASON HOSPITAL OUTPATIENT
SURGERY CENTER AT FEDERAL WAY
925 Seneca St.
Seattle, WA 98101-2742

**EMANATE HEALTH FOOTHILL
PRESBYTERIAN HOSPITAL**
250 S Grand Ave.
Glendora, CA 91741-4218

EMANATE HEALTH MEDICAL CENTER dba
EMANATE HEALTH INTER-COMMUNITY
HOSPITAL
210 W San Bernardino Rd.
Covina, CA 91723-1515

**HOAG MEMORIAL HOSPITAL
PRESBYTERIAN**
One Hoag Dr.
Newport Beach, CA 92658-6100

HOAG ORTHOPEDIC INSTITUTE, LLC
162050 Sand Canyon Ave.
Irvine, CA 92618

**JOHN MUIR HEALTH dba JOHN MUIR
MEDICAL CENTER - CONCORD CAMPUS**
2540 East St.
Concord, CA 94520-1906

JOHN MUIR HEALTH dba JOHN MUIR
MEDICAL CENTER - WALNUT CREEK
CAMPUS
1601 Ygnacio Valley Rd.
Walnut Creek, CA 94598-3122

**KECK MEDICAL CENTER OF USC dba**

**KECK HOSPITAL OF USC**
1500 San Pablo St.
Los Angeles, CA 90033-5313

USC ARCADIA HOSPITAL fka METHODIST
HOSPITAL OF SOUTHERN CALIFORNIA
300 West Huntington Dr.
Arcadia, CA 91007

USC VERDUGO HILLS HOSPITAL
1812 Verdugo Blvd.
Glendale, CA 91208-1407

**ANAHEIM GLOBAL MEDICAL CENTER,
INC. dba ANAHEIM GLOBAL MEDICAL
CENTER**
1025 S. Anaheim Blvd.
Anaheim, CA 92805

CHAPMAN GLOBAL MEDICAL CENTER,
INC. dba CHAPMAN GLOBAL MEDICAL
CENTER
2601 E. Chapman Ave.
Orange, CA 92869

KPC GLOBAL MEDICAL CENTERS, INC. dba
HEMET GLOBAL MEDICAL CENTER
1117 E. Devonshire Ave.
Hemet, CA 92543

KPC GLOBAL MEDICAL CENTERS, INC. dba
MENIFEE GLOBAL MEDICAL CENTER
28400 McCall Blvd.
Sun City, CA 92585

ORANGE COUNTY GLOBAL MEDICAL
CENTER, INC. dba ORANGE COUNTY
GLOBAL MEDICAL CENTER
1001 N. Tustin Ave.
Santa Ana, CA 92705

SOUTH COAST GLOBAL MEDICAL CENTER,
INC. dba SOUTH COAST GLOBAL MEDICAL
CENTER
2701 S. Bristol St.
Santa Ana, CA 92704

VICTOR VALLEY HOSPITAL ACQUISITION,
INC. dba VICTOR VALLEY GLOBAL
MEDICAL CENTER
15248 Eleventh St.
Victorville, CA 92395

**L.A. DOWNTOWN MEDICAL CENTER, LLC dba L.A. DOWNTOWN MEDICAL CENTER**
1711 W Temple St.
Los Angeles, CA 90026

**LOMA LINDA UNIVERSITY CHILDREN'S HOSPITAL**
11234 Anderson St.
Loma Linda, CA 92354

LOMA LINDA UNIVERSITY MEDICAL CENTER, INC.
11234 Anderson St.
Loma Linda, CA 92354

LOMA LINDA UNIVERSITY MEDICAL CENTER MURRIETA
28062 Baxter Rd.
Murrieta, CA 92563

**LONG BEACH MEMORIAL MEDICAL CENTER dba MEMORIALCARE LONG BEACH MEDICAL CENTER**
2801 Atlantic Ave.
Long Beach, CA 90806-1701

ORANGE COAST MEMORIAL MEDICAL CENTER dba MEMORIALCARE ORANGE COAST MEDICAL CENTER
9920 Talbert Ave.
Fountain Valley, CA 92708-5153

SADDLEBACK MEMORIAL MEDICAL CENTER dba MEMORIALCARE SADDLEBACK MEDICAL CENTER
24451 Health Center Dr.
Laguna Hills, CA 92653-3689

**PALOMAR HEALTH dba PALOMAR MEDICAL CENTER ESCONDIDO**
2185 Citracado Pkwy.
Escondido, CA 92029

PALOMAR HEALTH dba PALOMAR MEDICAL CENTER POWAY
15615 Pomerado Rd.
Poway, CA 92064

**PIH HEALTH DOWNEY HOSPITAL**
11500 Brookshire Ave.
Downey, CA 90241-4917

PIH HEALTH GOOD SAMARITAN HOSPITAL
1245 Wilshire Blvd.
Los Angeles, CA 90017-4812

PIH HEALTH WHITTIER HOSPITAL
12401 Washington Blvd.
Whittier, CA 90602-1006

**ALTA LOS ANGELES HOSPITALS, INC.
dba LOS ANGELES COMMUNITY
HOSPITAL**
4081 E Olympic Blvd.
Los Angeles, CA 90023-3330

ALTA NEWPORT HOSPITAL, LLC dba
FOOTHILL REGIONAL MEDICAL CENTER
14662 Newport Ave.
Tustin, CA 92780-6064

PROSPECT CCMC, LLC dba CROZER-
CHESTER MEDICAL CENTER
One Medical Center Blvd.
Upland, PA 19013-3902

PROSPECT CHARTERCARE RWMC, LLC dba
ROGER WILLIAMS MEDICAL CENTER
825 Chalkstone Ave.
Providence, RI 02908-4735

PROSPECT CHARTERCARE SJHSRI, LLC dba
OUR LADY OF FATIMA HOSPITAL
200 High Service Ave.
North Providence, RI 02904-5113

PROSPECT MANCHESTER HOSPITAL, INC.
dba MANCHESTER MEMORIAL
HOSPITAL
71 Haynes St.
Manchester, CT 06040-4131

PROSPECT WATERBURY, INC. dba
WATERBURY HOSPITAL
64 Robbins St.
Waterbury, CT 06708-2613

SOUTHERN CALIFORNIA HEALTHCARE
SYSTEM, INC dba SOUTHERN CALIFORNIA
HOSPITAL AT HOLLYWOOD
6245 De Longpre Ave.
Hollywood, CA 90028-8253

**SCRIPPS HEALTH dba SCRIPPS GREEN
HOSPITAL**

10666 N Torrey Pines Rd.
La Jolla, CA 92037-1027

SCRIPPS HEALTH dba SCRIPPS MEMORIAL
HOSPITAL ENCINITAS
354 Santa Fe Dr.
Encinitas, CA 92024-5142

SCRIPPS HEALTH dba SCRIPPS MEMORIAL
HOSPITAL LA JOLLA
9888 Genesee Ave.
La Jolla, CA 92037-1205

SCRIPPS HEALTH dba SCRIPPS MERCY
HOSPITAL
4077 5Th Ave.
San Diego, CA 92103-2105

**GROSSMONT HOSPITAL CORPORATION**
5555 Grossmont Center Dr.
La Mesa, CA 91942-3019

SHARP CHULA VISTA MEDICAL CENTER
751 Medical Center Ct.
Chula Vista, CA 91911-6617

SHARP CORONADO HOSPITAL AND
HEALTHCARE CENTER
250 Prospect Pl.
Coronado, CA 92118-1943

SHARP MEMORIAL HOSPITAL
7901 Frost St.
San Diego, CA 92123-2701

**STANFORD HEALTH CARE**
500 Pasteur Dr., MC 5690
Palo Alto, CA 94304

STANFORD HEALTH CARE TRI-VALLEY
5555 W Las Positas Blvd.
Pleasanton, CA 94588-4000

**SUTTER BAY HOSPITALS dba ALTA
BATES MEDICAL CENTER**
2000 Powell St., 10th Floor
Emeryville, CA 94608

SUTTER BAY HOSPITALS dba ALTA BATES
SUMMIT MEDICAL CENTER
2000 Powell St., 10th Floor
Emeryville, CA 94608

SUTTER BAY HOSPITALS dba CALIFORNIA
PACIFIC MEDICAL CENTER
2000 Powell St., 10th Floor
Emeryville, CA 94608

SUTTER BAY HOSPITALS dba CPMC R.K.
DAVIS MEDICAL CENTER
2000 Powell St., 10th Floor
Emeryville, CA 94608

SUTTER BAY HOSPITALS dba EDEN
MEDICAL CENTER
2000 Powell St., 10th Floor
Emeryville, CA 94608

SUTTER BAY HOSPITALS dba MILLS-
PENINSULA MEDICAL CENTER
2000 Powell St., 10th Floor
Emeryville, CA 94608

SUTTER BAY HOSPITALS dba NOVATO
COMMUNITY HOSPITAL
2000 Powell St., 10th Floor
Emeryville, CA 94608

SUTTER BAY HOSPITALS dba ST. LUKES
HOSPITAL
2000 Powell St., 10th Floor
Emeryville, CA 94608

SUTTER BAY HOSPITALS dba SUTTER
DELTA MEDICAL CENTER
2000 Powell St., 10th Floor
Emeryville, CA 94608

SUTTER BAY HOSPITALS dba SUTTER
MATERNITY & SURGERY CENTER OF
SANTA CRUZ
2000 Powell St., 10th Floor
Emeryville, CA 94608

SUTTER BAY HOSPITALS dba SUTTER
MEDICAL CENTER OF SANTA ROSA
2000 Powell St., 10th Floor
Emeryville, CA 94608

SUTTER VALLEY HOSPITALS dba
MEMORIAL MEDICAL CENTER
2700 Gateway Oaks Blvd., Suite 2200
Sacramento, CA 95833

SUTTER VALLEY HOSPITALS dba SUTTER
AUBURN FAITH HOSPITAL

2700 Gateway Oaks Blvd., Suite 2200
Sacramento, CA 95833

SUTTER VALLEY HOSPITALS dba SUTTER
DAVIS HOSPITAL
2700 Gateway Oaks Blvd., Suite 2200
Sacramento, CA 95833

SUTTER VALLEY HOSPITALS dba SUTTER
MEDICAL CENTER - SACRAMENTO
2700 Gateway Oaks Blvd., Suite 2200
Sacramento, CA 95833

SUTTER VALLEY HOSPITALS dba SUTTER
ROSEVILLE MEDICAL CENTER
2700 Gateway Oaks Blvd., Suite 2200
Sacramento, CA 95833

SUTTER VALLEY HOSPITALS dba SUTTER
SOLANO MEDICAL CENTER
2700 Gateway Oaks Blvd., Suite 2200
Sacramento, CA 95833

SUTTER VALLEY HOSPITALS dba SUTTER
TRACY COMMUNITY HOSPITAL
2700 Gateway Oaks Blvd., Suite 2200
Sacramento, CA 95833

TWIN CITIES SURGICAL HOSPITAL, LLC
dba SUTTER SURGICAL HOSPITAL - NORTH
VALLEY
2700 Gateway Oaks Blvd., Suite 2200
Sacramento, CA 95833

**THE REGENTS OF THE UNIVERSITY OF
CALIFORNIA dba RONALD REAGAN
UCLA MEDICAL CENTER**
757 Westwood Plaza
Los Angeles, CA 90095

THE REGENTS OF THE UNIVERSITY OF
CALIFORNIA dba SANTA MONICA UCLA
MEDICAL CENTER & ORTHOPAEDIC
HOSPITAL
1250 16th St.
Santa Monica, CA  90404-1249

THE REGENTS OF THE UNIVERSITY OF
CALIFORNIA dba UCSD MEDICAL CENTER
200 W Arbor Dr.
San Diego, CA 92103-1422

THE REGENTS OF THE UNIVERSITY OF

CALIFORNIA dba UCSF MEDICAL CENTER
1855 Folsom St., Ste 224
Box 0729
San Francisco, CA 94143-0729

THE REGENTS OF THE UNIVERSITY OF
CALIFORNIA dba UNIVERSITY OF
CALIFORNIA DAVIS MEDICAL CENTER
2315 Stockton Blvd.
Sacramento, CA 95817-2201

THE REGENTS OF THE UNIVERSITY OF
CALIFORNIA dba UNIVERSITY OF
CALIFORNIA IRVINE MEDICAL CENTER
101 The City Dr. S
Orange, CA  92868-3201

**ADVENTIST HEALTH dba ADVENTIST
HEALTH SPECIALTY BAKERSFIELD fka
BAKERSFIELD HEART HOSPITAL**
3001 Sillect Ave.
Bakersfield, CA 93308

ADVENTIST HEALTH DELANO
1401 Garces Hwy
Delano, CA 93215-3660

ADVENTIST HEALTH TULARE
869 N Cherry St.
Tulare, CA 93274-2207

CASTLE MEDICAL CENTER dba ADVENTIST
HEALTH CASTLE
640 Ulukahiki St.
Kailua, HI 96734-4454

GLENDALE ADVENTIST MEDICAL CENTER
dba ADVENTIST HEALTH GLENDALE
1509 Wilson Ter.
Glendale, CA  91206-4007

HANFORD COMMUNITY HOSPITAL dba
ADVENTIST HEALTH HANFORD
115 Mall Dr.
Hanford, CA 93230-5786

LODI MEMORIAL HOSPITAL ASSOCIATION,
INC. dba ADVENTIST HEALTH LODI
MEMORIAL
975 S Fairmont Ave.
Lodi, CA 95240-5118

PORTLAND ADVENTIST MEDICAL CENTER

dba ADVENTIST HEALTH PORTLAND
10123 SE Market St.
Portland, OR 97216

REEDLEY COMMUNITY HOSPITAL dba
ADVENTIST HEALTH REEDLEY
372 W Cypress Ave.
Reedley, CA 93654-2113

SAN JOAQUIN COMMUNITY HOSPITAL dba
ADVENTIST HEALTH BAKERSFIELD
2615 Chester Ave.
Bakersfield, CA 93301-2014

SIMI VALLEY HOSPITAL AND HEALTH
CARE SERVICES dba ADVENTIST HEALTH
SIMI VALLEY
2975 Sycamore Dr.
Simi Valley, CA 93065-1201

ST. HELENA HOSPITAL dba ADVENTIST
HEALTH ST. HELENA
10 Woodland Rd.
Saint Helena, CA 94574-9554

UKIAH ADVENTIST HOSPITAL dba
ADVENTIST HEALTH UKIAH VALLEY
275 Hospital Dr.
Ukiah, CA 95482-4531

WHITE MEMORIAL MEDICAL CENTER dba
ADVENTIST HEALTH WHITE MEMORIAL
1720 E Cesar E Chavez Ave.
Los Angeles, CA 90033-2414

**KAISER FOUNDATION HEALTH PLAN OF
WASHINGTON dba KAISER
PERMANENTE CENTRAL HOSPITAL**
201 16th Ave. E
Seattle, WA 98112-5226

KAISER FOUNDATION HOSPITAL dba
KAISER FOUNDATION HOSPITAL - SAN
RAFAEL
99 Montecillo Rd.
San Rafael, CA 94903

KAISER FOUNDATION HOSPITALS dba
KAISER FOUNDATION HOSPITAL
3288 Moanalua Rd.
Honolulu, HI 96819-1469

KAISER FOUNDATION HOSPITALS dba

KAISER FOUNDATION HOSPITAL -
ANTIOCH
4501 Sand Creek Rd.
Antioch, CA 94531-8687

KAISER FOUNDATION HOSPITALS dba
KAISER FOUNDATION HOSPITAL -
FONTANA
9961 Sierra Ave.
Fontana, CA 92335-6720

KAISER FOUNDATION HOSPITALS dba
KAISER FOUNDATION HOSPITAL -
REDWOOD CITY
1100 Veterans Blvd.
Redwood City, CA 94063-2037

KAISER FOUNDATION HOSPITALS dba
KAISER FOUNDATION HOSPITAL -
SACRAMENTO
2025 Morse Ave.
Sacramento, CA 95825-2115

KAISER FOUNDATION HOSPITALS dba
KAISER FOUNDATION HOSPITAL - SANTA
CLARA
700 Lawrence Expy
Santa Clara, CA 95051-5173

KAISER FOUNDATION HOSPITALS dba
KAISER FOUNDATION HOSPITAL & REHAB
CENTER - VALLEJO
975 Sereno Dr.
Vallejo, CA 94589

KAISER FOUNDATION HOSPITALS dba
KAISER FOUNDATION HOSPITAL-
DOWNEY
9333 Imperial Hwy
Downey, CA 90242-2812

KAISER FOUNDATION HOSPITALS dba
KAISER FOUNDATION HOSPITAL-
FREMONT
39400 Paseo Padre Pkwy
Fremont, CA 94538-2310

KAISER FOUNDATION HOSPITALS dba
KAISER FOUNDATION HOSPITAL LOS
ANGELES
4867 W Sunset Blvd.
Los Angeles, CA 90027-5969

KAISER FOUNDATION HOSPITALS dba
KAISER FOUNDATION HOSPITAL
OAKLAND RICHMOND
275 W Macarthur Blvd.
Oakland, CA 94611-5641

KAISER FOUNDATION HOSPITALS dba
KAISER FOUNDATION HOSPITAL
PANORAMA CITY
13652 Cantara St.
Panorama City, CA 91402-5423

KAISER FOUNDATION HOSPITALS dba
KAISER FOUNDATION HOSPITAL-
RIVERSIDE
10800 Magnolia Ave.
Riverside, CA 92505-3043

KAISER FOUNDATION HOSPITALS dba
KAISER FOUNDATION HOSPITAL SAN
FRANCISCO
2425 Geary Blvd.
San Francisco, CA 94115-3358

KAISER FOUNDATION HOSPITALS dba
KAISER FOUNDATION HOSPITAL SAN JOSE
250 Hospital Pkwy
San Jose, CA 95119-1103

KAISER FOUNDATION HOSPITALS dba
KAISER FOUNDATION HOSPITAL- SOUTH
BAY
25825 Vermont Ave.
Harbor City, CA 90710-3518

KAISER FOUNDATION HOSPITALS dba
KAISER FOUNDATION HOSPITAL SOUTH
SACRAMENTO
6600 Bruceville Rd.
Sacramento, CA 95823-4671

KAISER FOUNDATION HOSPITALS dba
KAISER FOUNDATION HOSPITAL SOUTH
SAN FRANCISCO
1200 El Camino Real
South San Francisco, CA 94080-3208

KAISER FOUNDATION HOSPITALS dba
KAISER FOUNDATION HOSPITAL WALNUT
CREEK
1425 S Main St.
Walnut Creek, CA 94596-5318

KAISER FOUNDATION HOSPITALS dba
KAISER FOUNDATION HOSPITAL WEST
LOS ANGELES
6041 Cadillac Ave.
Los Angeles, CA 90034-1702

KAISER FOUNDATION HOSPITALS dba
KAISER FOUNDATION HOSPITAL
WOODLAND HILLS
5601 De Soto Ave.
Woodland Hills, CA 91367-6701

KAISER FOUNDATION HOSPITALS dba
KAISER FOUNDATION HOSPITAL- ZION
4647 Zion Ave.
San Diego, CA 92120

KAISER FOUNDATION HOSPITALS dba
KAISER FOUNDATION HOSPITALS -
ORANGE COUNTY - ANAHEIM
3440 E La Palma Ave.
Anaheim, CA 92806-2020

KAISER FOUNDATION HOSPITALS dba
KAISER FOUNDATION HOSPITAL -
MANTECA
1777 W Yosemite Ave.
Manteca, CA 95337-5130

KAISER FOUNDATION HOSPITALS dba
KAISER FOUNDATION HOSPITAL -
MORENO VALLEY
27300 Iris Ave.
Moreno Valley, CA 92555-4802

KAISER FOUNDATION HOSPITALS dba
KAISER FOUNDATION HOSPITAL-
ROSEVILLE
1600 Eureka Rd.
Roseville, CA 95661-3027

KAISER FOUNDATION HOSPITALS dba
KAISER FOUNDATION HOSPITAL-
SAN LEANDRO
2500 Merced St.
San Leandro, CA 94577-4201

KAISER FOUNDATION HOSPITALS dba
KAISER FOUNDATION HOSPITAL -
SANTA ROSA
401 Bicentennial Way
Santa Rosa, CA 95403-2149

KAISER FOUNDATION HOSPITALS dba
KAISER FOUNDATION HOSPITAL-
VACAVILLE
1 Quality Dr.
Vacaville, CA 95688-9494

KAISER FOUNDATION HOSPITALS dba
KAISER FOUNDATION HOSPITAL-
WESTSIDE
2875 NW Stucki Ave.
Hillsboro, OR 97124-5806

KAISER FOUNDATION HOSPITALS dba
KAISER FOUNDATION HOSPITAL
BALDWIN PARK
1011 Baldwin Park Blvd.
Baldwin Park, CA 91706-5806

KAISER FOUNDATION HOSPITALS dba
KAISER FOUNDATION HOSPITAL
FRESNO
7300 N Fresno St.
Fresno, CA 93720-2941

KAISER FOUNDATION HOSPITALS dba
KAISER SUNNYSIDE MEDICAL
CENTER
10180 Se Sunnyside Rd.
Clackamas, OR 97015-8970

**PRIME HEALTHCARE PARADISE
VALLEY, LLC dba PARADISE VALLEY
HOSPITAL**
3480 E Guasti Rd.
Ontario, CA 91761

PRIME HEALTHCARE ANAHEIM, LLC dba
WEST ANAHEIM MEDICAL CENTER
3480 E Guasti Rd.
Ontario, CA 91761

PRIME HEALTHCARE SERVICES - ST.
FRANCIS, LLC dba SAINT FRANCIS
MEDICAL CENTER
3480 E Guasti Rd.
Ontario, CA 91761

PRIME HEALTHCARE SERVICES - ENCINO,
LLC dba ENCINO HOSPITAL MEDICAL
CENTER
3480 E Guasti Rd.
Ontario, CA 91761

PRIME HEALTHCARE SERVICES - GARDEN
GROVE, LLC dba GARDEN GROVE
HOSPITAL & MEDICAL CENTER
3480 E Guasti Rd.
Ontario, CA 91761

PRIME HEALTHCARE HUNTINGTON
BEACH, LLC dba HUNTINGTON BEACH
HOSPITAL
3480 E Guasti Rd.
Ontario, CA 91761

PRIME HEALTHCARE LA PALMA, LLC dba
LA PALMA INTERCOMMUNITY HOSPITAL
3480 E Guasti Rd.
Ontario, CA 91761

VERITAS HEALTH SERVICES, LLC dba
CHINO VALLEY MEDICAL CENTER
3480 E Guasti Rd.
Ontario, CA 91761

PRIME HEALTHCARE SERVICES - SAN
DIMAS, LLC dba SAN DIMAS COMMUNITY
HOSPITAL
3480 E Guasti Rd.
Ontario, CA 91761

DESERT VALLEY HOSPITAL, LLC dba
DESERT VALLEY HOSPITAL
3480 E Guasti Rd.
Ontario, CA 91761

PRIME HEALTHCARE CENTINELA, LLC dba
CENTINELA HOSPITAL MEDICAL CENTER
3480 E Guasti Rd.
Ontario, CA 91761

PRIME HEALTHCARE SERVICES -
SHERMAN OAKS, LLC dba SHERMAN OAKS
HOSPITAL
3480 E Guasti Rd.
Ontario, CA 91761

ALVARADO HOSPITAL, LLC dba
ALVARADO HOSPITAL MEDICAL CENTER
3480 E Guasti Rd.
Ontario, CA 91761

PRIME HEALTHCARE SERVICES -
MONTCLAIR, LLC dba MONTCLAIR
HOSPITAL MEDICAL CENTER
3480 E Guasti Rd.

Ontario, CA 91761

PRIME HEALTHCARE SERVICES - SHASTA,
LLC dba SHASTA REGIONAL MEDICAL
CENTER
3480 E Guasti Rd.
Ontario, CA 91761

PRIME HEALTHCARE SERVICES - LEHIGH
ACRES, LLC dba LEHIGH REGIONAL
MEDICAL CENTER
3480 E Guasti Rd.
Ontario, CA 91761

PRIME HEALTHCARE FOUNDATION -
SOUTHERN REGIONAL, LLC dba SOUTHERN
REGIONAL MEDICAL CENTER
3480 E Guasti Rd.
Ontario, CA 91761

PRIME HEALTHCARE SERVICES - MONROE,
LLC dba MONROE HOSPITAL
3480 E Guasti Rd.
Ontario, CA 91761

PRIME HEALTHCARE SERVICES - SAINT
JOHN LEAVENWORTH, LLC dba SAINT
JOHN HOSPITAL
3480 E Guasti Rd.
Ontario, CA 91761

PRIME HEALTHCARE SERVICES -
PROVIDENCE, LLC dba PROVIDENCE
MEDICAL CENTER
3480 E Guasti Rd.
Ontario, CA 91761

PRIME HEALTHCARE SERVICES - PORT
HURON, LLC dba LAKE HURON MEDICAL
CENTER
3480 E Guasti Rd.
Ontario, CA 91761

PRIME HEALTHCARE SERVICES - GARDEN
CITY, LLC dba GARDEN CITY HOSPITAL
3480 E Guasti Rd.
Ontario, CA 91761

PRIME HEALTHCARE SERVICES - KANSAS
CITY, LLC dba ST. JOSEPH MEDICAL
CENTER
3480 E Guasti Rd.
Ontario, CA 91761

PRIME HEALTHCARE SERVICES - BLUE
SPRINGS, LLC dba ST. MARY'S MEDICAL
CENTER
3480 E Guasti Rd.
Ontario, CA 91761

NORTH VISTA HOSPITAL, LLC dba NORTH
VISTA HOSPITAL
3480 E Guasti Rd.
Ontario, CA 91761

PRIME HEALTHCARE SERVICES - RENO,
LLC dba ST. MARY'S REGIONAL MEDICAL
CENTER
3480 E Guasti Rd.
Ontario, CA 91761

PRIME HEALTHCARE SERVICES - ST.
MARY'S PASSAIC, LLC dba ST. MARY'S
GENERAL HOSPITAL
3480 E Guasti Rd.
Ontario, CA 91761

PRIME HEALTHCARE SERVICES - SAINT
CLARE'S, LLC dba ST. CLARE'S HOSPITAL
DENVILLE
3480 E Guasti Rd.
Ontario, CA 91761

PRIME HEALTHCARE SERVICES - ST.
MICHAEL'S, LLC dba ST. MICHAEL'S
MEDICAL CENTER
3480 E Guasti Rd.
Ontario, CA 91761

PRIME HEALTHCARE SERVICES - LOWER
BUCKS, LLC dba LOWER BUCKS HOSPITAL
3480 E Guasti Rd.
Ontario, CA 91761

PRIME HEALTHCARE SERVICES -
SUBURBAN HOSPITAL, LLC dba SUBURBAN
COMMUNITY HOSPITAL
3480 E Guasti Rd.
Ontario, CA 91761

PRIME HEALTHCARE SERVICES -
ROXBOROUGH, LLC dba ROXBOROUGH
MEMORIAL HOSPITAL
3480 E Guasti Rd.
Ontario, CA 91761

PRIME HEALTHCARE SERVICES -
LANDMARK, LLC dba LANDMARK
MEDICAL CENTER
3480 E Guasti Rd.
Ontario, CA 91761

DALLAS MEDICAL CENTER, LLC dba
DALLAS MEDICAL CENTER
3480 E Guasti Rd.
Ontario, CA 91761

PRIME HEALTHCARE SERVICES -
MESQUITE, LLC dba DALLAS REGIONAL
MEDICAL CENTER
3480 E Guasti Rd.
Ontario, CA 91761

HARLINGEN MEDICAL CENTER, LP dba
HARLINGEN MEDICAL CENTER
3480 E Guasti Rd.
Ontario, CA 91761

KNAPP MEDICAL CENTER
3480 E Guasti Rd.
Ontario, CA 91761

MISSION HOSPITAL, INC. dba MISSION
REGIONAL MEDICAL CENTER
3480 E Guasti Rd.
Ontario, CA 91761

**COVENANT MEDICAL CENTER**
3615 19th St
Lubbock, TX 79410-1203

KADLEC REGIONAL MEDICAL CENTER
888 Swift Blvd
Richland, WA 99352-3514

LUBBOCK HERITAGE HOSPITAL, LLC. dba
GRACE SURGICAL HOSPITAL
7509 Marsha Sharp Fwy
Lubbock, TX 79407-8202

METHODIST HOSPITAL LEVELLAND dba
COVENANT HOSPITAL LEVELLAND
1900 College Ave.
Levelland, TX 79336-6508

METHODIST HOSPITAL PLAINVIEW TEXAS
dba COVENANT HOSPITAL PLAINVIEW
2601 Dimmitt Rd.
Plainview, TX 79072-1833

MISSION HOSPITAL REGIONAL MEDICAL
CENTER dba PROVIDENCE MISSION
HOSPITAL
27700 Medical Center Rd.
Mission Viejo, CA 92691-6426

NORCAL HEALTHCONNECT LLC dba
PETALUMA VALLEY HOSPITAL
400 N McDowell Blvd.
Petaluma, CA 94954-2339

PROVIDENCE HEALTH & SERVICES -
OREGON dba PROVIDENCE WILLAMETTE
FALLS MEDICAL CENTER
1500 Division St.
Oregon City, OR  97045-1527

PROVIDENCE HEALTH & SERVICES-  WA
dba PROV REGIONAL MED CTR EVERETT
1321 Colby Ave.
Everett, WA 98201-1665

PROVIDENCE HEALTH & SERVICES – WA
dba PROV SACRED HRT MED CTR &
CHILDS HOSP
101 W 8th Ave.
Spokane, WA 99204-2307

PROVIDENCE HEALTH & SERVICES –
WASHINGTON dba PROVIDENCE HOLY
FAMILY HOSPITAL
5633 N Lidgerwood St.
Spokane, WA 99208-1224

PROVIDENCE HEALTH & SERVICES -
WASHINGTON dba PROVIDENCE ST MARY
MEDICAL CENTER
401 W Poplar St.
Walla Walla, WA 99362-2846

PROVIDENCE HEALTH & SERVICES MT dba
PROVIDENCE ST PATRICK HOSPITAL
500 W Broadway St.
Missoula, MT 59802-4008

PROVIDENCE HEALTH & SERVICES
OREGON dba PROVIDENCE MEDFORD
MEDICAL CENTER
1111 Crater Lake Ave.
Medford, OR 97504-6241

PROVIDENCE HEALTH & SERVICES

OREGON dba PROVIDENCE MILWAUKIE
HOSPITAL
10150 Se 32Nd Ave.
Milwaukie, OR 97222-6516

PROVIDENCE HEALTH & SERVICES
OREGON dba PROVIDENCE NEWBERG
MEDICAL CENTER
1001 N Providence Dr.
Newberg, OR 97132-7485

PROVIDENCE HEALTH & SERVICES
OREGON dba PROVIDENCE PORTLAND
MEDICAL CENTER
4805 Ne Glisan St.
Portland, OR 97213-2933

PROVIDENCE HEALTH & SERVICES
OREGON dba PROVIDENCE ST VINCENT
MEDICAL CENTER
9205 SW Barnes Rd.
Portland, OR 97225-6603

PROVIDENCE HEALTH & SERVICES
WASHINGTON dba PROVIDENCE ALASKA
MEDICAL CENTER
3200 Providence Dr.
Anchorage, AK 99508-4615

PROVIDENCE HEALTH & SERVICES
WASHINGTON dba PROVIDENCE ST PETER
HOSPITAL
413 Lilly Rd. NE
Olympia, WA 98506-5166

PROVIDENCE HEALTH SYSTEM -
SOUTHERN CALIFORNIA dba PROVIDENCE
HOLY CROSS MEDICAL CENTER
15031 Rinaldi St.
Mission Hills, CA 91345-1207

PROVIDENCE HEALTH SYSTEM -
SOUTHERN CALIFORNIA dba PROVIDENCE
LITTLE COMPANY OF MARY MEDICAL
CENTER SAN PEDRO
1300 W 7th St.
San Pedro, CA 90732-3505

PROVIDENCE HEALTH SYSTEM -
SOUTHERN CALIFORNIA dba PROVIDENCE
SAINT JOSEPH MEDICAL CENTER
501 S Buena Vista St.
Burbank, CA 91505-4809

PROVIDENCE HEALTH SYSTEM SOUTHERN
CALIFORNIA dba PROVIDENCE LITTLE
COMPANY OF MARY MEDICAL CENTER
TORRANCE
4101 Torrance Blvd.
Torrance, CA 90503-4607

PROVIDENCE SAINT JOHN'S HEALTH
CENTER dba SAINT JOHN'S HEALTH
CENTER
2121 Santa Monica Blvd.
Santa Monica, CA 90404-2303

ST JOSEPH HEALTH NORTHERN
CALIFORNIA LLC dba PROVIDENCE QUEEN
OF THE VALLEY MEDICAL CENTER
1000 Trancas St.
Napa, CA 94558-2906

ST JOSEPH HEALTH NORTHERN
CALIFORNIA LLC dba PROVIDENCE ST.
JOSEPH HOSPITAL
2700 Dolbeer St.
Eureka, CA 95501-4736

ST JOSEPH HEALTH NORTHERN
CALIFORNIA LLC dba PROVIDENCE SANTA
ROSA MEMORIAL HOSPITAL
1165 Montgomery Dr.
Santa Rosa, CA 95405-4801

ST JOSEPH HOSPITAL OF ORANGE A CORP
dba PROVIDENCE ST. JOSEPH HOSPITAL
1100 W Stewart Dr.
Orange, CA 92868-3849

ST MARY MEDICAL CENTER dba
PROVIDENCE ST. MARY MEDICAL CENTER
18300 US Hwy 18
Apple Valley, CA 92307-2206

ST. JUDE HOSPITAL INC dba PROVIDENCE
ST. JUDE MEDICAL CENTER
101 E Valencia Mesa Dr.
Fullerton, CA 92835-3809

SWEDISH EDMONDS
21601 76th Ave. W
Edmonds, WA 98026-7507

SWEDISH HEALTH SERVICES dba SWEDISH
MEDICAL CENTER

747 Broadway
Seattle, WA 98122-4379

SWEDISH HEALTH SERVICES dba SWEDISH
MEDICAL CENTER CHERRY HILL
500 17th Ave.
Seattle, WA 98122-5711

SWEDISH HEALTH SERVICES dba
SWEDISH/ISSAQUAH
751 NE Blakely Dr.
Issaquah, WA 98029-6201

TARZANA MEDICAL CENTER, LLC dba
PROVIDENCE CEDARS-SINAI TARZANA
MEDICAL CENTER
18321 Clark St.
Tarzana, CA 91356-3501

**AMISUB (SFH), INC. dba SAINT FRANCIS
HOSPITAL**
14201 Dallas Pkwy
Dallas, TX 75254

AMISUB OF SOUTH CAROLINA, INC. dba
PIEDMONT MEDICAL CENTER
14201 Dallas Pkwy
Dallas, TX 75254

BBH BMC, LLC  dba BROOKWOOD BAPTIST
MEDICAL CENTER
14201 Dallas Pkwy
Dallas, TX 75254

BBH CBMC, LLC  dba CITIZENS BAPTIST
MEDICAL CENTER
14201 Dallas Pkwy
Dallas, TX 75254

BBH PBMC, LLC dba PRINCETON BAPTIST
MEDICAL CENTER
14201 Dallas Pkwy
Dallas, TX 75254

BBH SBMC, LLC dba SHELBY BAPTIST
MEDICAL CENTER
14201 Dallas Pkwy
Dallas, TX 75254

BBH WBMC, LLC  dba WALKER BAPTIST
MEDICAL CENTER
14201 Dallas Pkwy
Dallas, TX 75254

CCMC HOLDINGS, INC. fka COASTAL
CAROLINA MEDICAL CENTER, INC. dba
COASTAL CAROLINA HOSPITAL
14201 Dallas Pkwy
Dallas, TX 75254

DELRAY MEDICAL CENTER, INC. dba
DELRAY MEDICAL CENTER
14201 Dallas Pkwy
Dallas, TX 75254

DESERT REGIONAL MEDICAL CENTER,
INC. fka TENET HEALTHSYSTEM DESERT,
INC. dba DESERT REGIONAL MEDICAL
CENTER
14201 Dallas Pkwy
Dallas, TX 75254

DOCTORS HOSPITAL OF MANTECA, INC.
dba DOCTORS HOSPITAL OF MANTECA
14201 Dallas Pkwy
Dallas, TX 75254

DOCTORS MEDICAL CENTER OF
MODESTO, INC. dba DOCTORS MEDICAL
CENTER
14201 Dallas Pkwy
Dallas, TX 75254

DOCTORS MEDICAL CENTER OF
MODESTO, INC. dba EMANUEL MEDICAL
CENTER
14201 Dallas Pkwy
Dallas, TX 75254

ECMC HOLDINGS, INC. fka EAST COOPER
COMMUNITY HOSPITAL, INC. dba EAST
COOPER MEDICAL CENTER
14201 Dallas Pkwy
Dallas, TX 75254

FOUNTAIN VALLEY REGIONAL HOSPITAL
& MEDICAL CENTER dba FOUNTAIN
VALLEY REGIONAL HOSPITAL & MEDICAL
CENTER
14201 Dallas Pkwy
Dallas, TX 75254

GOOD SAMARITAN MEDICAL CENTER,
INC. dba GOOD SAMARITAN MEDICAL
CENTER
14201 Dallas Pkwy

Dallas, TX 75254

HDMC HOLDINGS, L.L.C. dba HI-DESERT
MEDICAL CENTER
14201 Dallas Pkwy
Dallas, TX 75254

HOSPITAL DEVELOPMENT OF WEST
PHOENIX, INC. dba ABRAZO WEST CAMPUS
fka WEST VALLEY HOSPITAL
14201 Dallas Pkwy
Dallas, TX 75254

JFK MEMORIAL HOSPITAL, INC. dba JOHN
F. KENNEDY MEMORIAL HOSPITAL
14201 Dallas Pkwy
Dallas, TX 75254

LAKEWOOD REGIONAL MEDICAL CENTER,
INC. dba LAKEWOOD REGIONAL MEDICAL
CENTER
14201 Dallas Pkwy
Dallas, TX 75254

LOS ALAMITOS MEDICAL CENTER, INC.
dba LOS ALAMITOS MEDICAL CENTER
14201 Dallas Pkwy
Dallas, TX 75254

PALM BEACH GARDENS COMMUNITY
HOSPITAL, INC. dba PALM BEACH
GARDENS MEDICAL CENTER
14201 Dallas Pkwy
Dallas, TX 75254

PLACENTIA-LINDA HOSPITAL, INC. dba
PLACENTIA LINDA HOSPITAL
14201 Dallas Pkwy
Dallas, TX 75254

RESOLUTE HOSPITAL COMPANY, LLC dba
RESOLUTE BAPTIST HOSPITAL fka
RESOLUTE HEALTH
14201 Dallas Pkwy
Dallas, TX 75254

SAINT FRANCIS HOSPITAL – BARTLETT,
INC. fka TENET HEALTHSYSTEM
BARTLETT, INC. dba SAINT FRANCIS
HOSPITAL – BARTLETT
14201 Dallas Pkwy
Dallas, TX 75254

SAN RAMON REGIONAL MEDICAL
CENTER, LLC dba SAN RAMON REGIONAL
MEDICAL CENTER
14201 Dallas Pkwy
Dallas, TX 75254

SIERRA VISTA HOSPITAL, INC. dba SIERRA
VISTA REGIONAL MEDICAL CENTER aka
TENET HEALTH CENTRAL COAST SIERRA
VISTA REGIONAL MEDICAL CENTER
14201 Dallas Pkwy
Dallas, TX 75254

SMSJ TUCSON HOLDINGS, LLC  dba ST.
JOSEPH'S HOSPITAL
14201 Dallas Pkwy
Dallas, TX 75254

SMSJ TUCSON HOLDINGS, LLC dba ST.
MARY'S HOSPITAL
14201 Dallas Pkwy
Dallas, TX 75254

ST. MARY'S MEDICAL CENTER, INC. fka
TENET ST. MARY'S, INC. dba ST. MARY'S
MEDICAL CENTER
14201 Dallas Pkwy
Dallas, TX 75254

TENET HOSPITALS LIMITED dba THE
HOSPITALS OF PROVIDENCE EAST
CAMPUS fka SIERRA PROVIDENCE EAST
MEDICAL CENTER
14201 Dallas Pkwy
Dallas, TX 75254

TENET HOSPITALS LIMITED dba THE
HOSPITALS OF PROVIDENCE MEMORIAL
CAMPUS fka PROVIDENCE MEMORIAL
HOSPITAL
14201 Dallas Pkwy
Dallas, TX 75254

TENET HOSPITALS LIMITED dba THE
HOSPITALS OF PROVIDENCE SIERRA
CAMPUS fka SIERRA MEDICAL CENTER
14201 Dallas Pkwy
Dallas, TX 75254

TENET HOSPITALS LIMITED dba THE
HOSPITALS OF PROVIDENCE
TRANSMOUNTAIN CAMPUS
14201 Dallas Pkwy

Dallas, TX 75254

TH HEALTHCARE, LTD. dba
NACOGDOCHES MEDICAL CENTER
14201 Dallas Pkwy
Dallas, TX 75254

TWIN CITIES COMMUNITY HOSPITAL, INC.
dba TWIN CITIES COMMUNITY HOSPITAL
14201 Dallas Pkwy
Dallas, TX 75254

VHS ACQUISITION SUBSIDIARY NUMBER
1, INC. dba ABRAZO SCOTTSDALE CAMPUS
fka PARADISE VALLEY HOSPITAL
14201 Dallas Pkwy
Dallas, TX 75254

VHS ACQUISITION SUBSIDIARY NUMBER
7, INC. dba SAINT VINCENT HOSPITAL
14201 Dallas Pkwy
Dallas, TX 75254

VHS ACQUISITION SUBSIDIARY NUMBER
9, INC. dba METROWEST MEDICAL CENTER
– FRAMINGHAM UNION CAMPUS
14201 Dallas Pkwy
Dallas, TX 75254

VHS BROWNSVILLE HOSPITAL COMPANY,
LLC dba VALLEY BAPTIST MEDICAL
CENTER – BROWNSVILLE
14201 Dallas Pkwy
Dallas, TX 75254

VHS DETROIT RECEIVING HOSPITAL, INC.
dba DETROIT RECEIVING HOSPITAL
14201 Dallas Pkwy
Dallas, TX 75254

VHS HARLINGEN HOSPITAL COMPANY,
LLC dba VALLEY BAPTIST MEDICAL
CENTER
14201 Dallas Pkwy
Dallas, TX 75254

VHS HARPER-HUTZEL HOSPITAL, INC. dba
HUTZEL WOMEN'S HOSPITAL
14201 Dallas Pkwy
Dallas, TX 75254

VHS HURON VALLEY-SINAI HOSPITAL,
INC. dba HURON VALLEY-SINAI HOSPITAL

14201 Dallas Pkwy
Dallas, TX 75254

VHS OF ARROWHEAD, INC. dba ABRAZO
ARROWHEAD CAMPUS fka ARROWHEAD
HOSPITAL
14201 Dallas Pkwy
Dallas, TX 75254

VHS OF PHOENIX, INC. dba ABRAZO
CENTRAL CAMPUS fka ABRAZO CENTRAL
CAMPUS
14201 Dallas Pkwy
Dallas, TX 75254

VHS SAN ANTONIO PARTNERS, LLC dba
BAPTIST MEDICAL CENTER
14201 Dallas Pkwy
Dallas, TX 75254

VHS SINAI-GRACE HOSPITAL, INC. dba
SINAI-GRACE HOSPITAL
14201 Dallas Pkwy
Dallas, TX 75254

WEST BOCA MEDICAL CENTER, INC. dba
WEST BOCA MEDICAL CENTER
14201 Dallas Pkwy
Dallas, TX 75254

**CORNERSTONE REGIONAL HOSPITAL,
LP dba CORNERSTONE REGIONAL
HOSPITAL**
2302 Cornerstone Blvd.
Edinburg, TX 78539-8471

DISTRICT HOSPITAL PARTNERS, L.P. dba
GEORGE WASHINGTON UNIVERSITY
HOSPITAL
900 23rd St. NW
Washington, DC 20037-2342

FORT DUNCAN MEDICAL CENTER, L.P. dba
FORT DUNCAN REGIONAL MEDICAL
CENTER
3333 N Foster Maldonado Blvd.
Eagle Pass, TX 78852-5148

LANCASTER HOSPITAL CORPORATION dba
PALMDALE REGIONAL MEDICAL CENTER
38600 Medical Center Dr.
Palmdale, CA 93551-4483

LAREDO REGIONAL MEDICAL CENTER,
L.P. dba DOCTORS HOSPITAL OF LAREDO
0700 Mcpherson Rd.
Laredo, TX 78045-6268

MANATEE MEMORIAL HOSPITAL, L.P. dba
LAKEWOOD RANCH MEDICAL CENTER
8330 Lakewood Ranch Blvd.
Bradenton, FL 34202-5174

MANATEE MEMORIAL HOSPITAL, L.P. dba
MANATEE MEMORIAL HOSPITAL
206 2nd St. E
Bradenton, FL 34208-1042

MCALLEN HOSPITALS, L.P. dba SOUTH
TEXAS HEALTH SYSTEM
1400 W Trenton Rd.
Edinburg, TX 78539-9105

NORTHWEST TEXAS HEALTHCARE
SYSTEM, INC. dba NORTHWEST TEXAS
HEALTHCARE SYSTEM
1501S Coulter St.
Amarillo, TX 79106-1770

SPARKS FAMILY HOSPITAL, INC. dba
NORTHERN NEVADA MEDICAL CENTER
2375 E Prater Way
Sparks, NV 89434-9641

SPARKS FAMILY HOSPITAL, INC. dba
NORTHERN NEVADA SIERRA MEDICAL
CENTER
625 Innovation Dr.
Reno, NV 89511

SUMMERLIN HOSPITAL MEDICAL CENTER
LLC dba SUMMERLIN HOSPITAL MEDICAL
CENTER
657 Town Center Dr.
Las Vegas, NV 89144-6367

TEMECULA VALLEY HOSPITAL, INC. dba
TEMECULA VALLEY HOSPITAL
31700 Temecula Pkwy
Temecula, CA 92592-5896

UHS OF TEXOMA, INC. dba TEXOMA
MEDICAL CENTER
5016 S US Hwy 75
Denison, TX 75020-4584

UHS-CORONA, INC. dba CORONA
REGIONAL MEDICAL CENTER
800 S Main St.
Corona, CA 92882-3420

UNIVERSAL HEALTH SERVICES OF
RANCHO SPRINGS, INC. dba SOUTHWEST
HEALTHCARE
25500 Medical Center Dr.
Murrieta, CA 92562-5965

VALLEY HEALTH SYSTEM LLC dba
CENTENNIAL HILLS HOSPITAL MEDICAL
CENTER
6900 N Durango Dr.
Las Vegas, NV 89149-4409

VALLEY HEALTH SYSTEM LLC dba
HENDERSON HOSPITAL
1050 W Galleria Dr.
Henderson, NV 89011-1706

VALLEY HEALTH SYSTEM LLC dba SPRING
VALLEY HOSPITAL MEDICAL CENTER
5400 S Rainbow Blvd.
Las Vegas, NV 89118-1859

VALLEY HEALTH SYSTEM LLC dba
VALLEY HOSPITAL MEDICAL CENTER
620 Shadow Ln.
Las Vegas, NV 89106-4119

WELLINGTON REGIONAL MEDICAL
CENTER LLC dba WELLINGTON REGIONAL
MEDICAL CENTER
10101 Forest Hill Blvd.
Wellington, FL 33414-6103

**ALAMEDA HEALTH SYSTEM dba
ALAMEDA HOSPITAL**
1411 E. 31st St.
Oakland, CA 94602

ALAMEDA HEALTH SYSTEM dba
HIGHLAND HOSPITAL
1411 E. 31st St.
Oakland, CA 94602

**COUNTY OF LOS ANGELES dba LAC
HARBOR UCLA MEDICAL CENTER**
1000 W. Carson St.
Torrance, CA 90502

COUNTY OF LOS ANGELES dba LAC
RANCHO LOS AMIGOS NATIONAL
REHABILITATION CENTER
7601 Imperial Hwy
Downey, CA 90242

COUNTY OF LOS ANGELES dba LOS
ANGELES COUNTY OLIVE VIEW-UCLA
MEDICAL CENTER and OLIVE VIEW – UCLA
MEDICAL CENTER
- LOS ANGELES
14445 Olive View Dr.
Sylmar, CA 91342

COUNTY OF LOS ANGELES dba LOS
ANGELES GENERAL MEDICAL CENTER fka
LAC+USC
2051 Marengo St.
Los Angeles, CA 90033

       Plaintiffs,

    v.

XAVIER BECERRA, Secretary,
United States Department of Health and Human
Services,
200 Independence Ave., S.W.
Washington, DC 20201,

       Defendant.

## COMPLAINT

  The above-captioned four hundred and fourteen Plaintiff hospitals (collectively the "Hospitals"), by and through their undersigned attorneys, bring this action against defendant Xavier Becerra, in his official capacity as the Secretary ("the Secretary") of the Department of Health and Human Services ("HHS"), and state as follows:

## INTRODUCTION

  1. This action arises under Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395 *et seq.* ("the Medicare Act"), and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 *et seq.* The Hospitals challenge the Secretary's unprecedented and unlawful reduction of their Medicare inpatient hospital payments for federal fiscal year ("FFY") 2024 (the "Payment

Reduction") to fund increased Medicare payments for labor costs to the one-quarter of Medicare-participating acute care hospitals in the markets with the lowest wages nationwide (in full, the "Low Wage Index Redistribution").

2.      Medicare payments for inpatient hospital services are adjusted to reflect the hospital labor costs in the area where the hospital is located through application of the "wage index," which the Secretary is required by statute to update annually based on actual data.  In the FFY 2020, 2021, 2022, 2023, and 2024 Hospital Inpatient Prospective Payment System ("IPPS") Final Rules, the Secretary increased the wage index values for the lowest quartile of Medicare-participating hospitals in a non-data based manner for the purported purpose of attempting to increase the wages paid by low wage index hospitals in the future.  Medicare Program; Hospital Inpatient Prospective Payment Systems for Acute Care Hospitals and the Long-Term Care Hospital Prospective Payment System and Policy Changes and Fiscal Year 2020 Rates, 84 Fed. Reg. 42,044, 42,326–28 (Aug. 16, 2019) ("FFY 2020 IPPS Final Rule"); as revised by 84 Fed. Reg. 53,603 *et seq.* (Oct. 8, 2019) ("FFY 2020 IPPS Final Rule Correction Notice"); Medicare Program; Hospital Inpatient Prospective Payment Systems for Acute Care Hospitals and the Long-Term Care Hospital Prospective Payment System and Final Policy Changes and Fiscal Year 2021 Rates; Quality Reporting and Medicare and Medicaid Promoting Interoperability Programs Requirements for Eligible Hospitals and Critical Access Hospitals, 85 Fed. Reg. 58,432, 58,765–66 (Sept. 18, 2020) ("FFY 2021 IPPS Final Rule"), as revised by 85 Fed. Reg. 78,748 *et seq.* (Dec. 7, 2020) ("FFY 2021 IPPS Final Rule Correction Notice"); Medicare Program; Hospital Inpatient Prospective Payment Systems for Acute Care Hospitals and the Long-Term Care Hospital Prospective Payment System and Policy Changes and Fiscal Year 2022 Rates; Quality Programs and Medicare Promoting Interoperability Program Requirements for Eligible Hospitals and Critical Access Hospitals; Changes to Medicaid Provider Enrollment; and Changes to the Medicare Shared Savings Program, 86 Fed. Reg. 44,774, 45,178–80 (Aug. 13, 2021) ("FFY 2022 IPPS Final Rule"); as revised by 86 Fed. Reg. 58,019 *et seq.* (Oct. 20, 2021) ("FFY 2022 IPPS Final Rule Correction Notice"); Medicare Program; Hospital Inpatient

Prospective Payment Systems for Acute Care Hospitals and the Long-Term Care Hospital Prospective Payment System and Policy Changes and Fiscal Year 2023 Rates; Quality Programs and Medicare Promoting Interoperability Program Requirements for Eligible Hospitals and Critical Access Hospitals; Costs Incurred for Qualified and Non-Qualified Deferred Compensation Plans; and Changes to Hospital and Critical Access Hospital Conditions of Participation, 87 Fed. Reg. 48,780, 49,006–09 (Aug. 10, 2022) ("FFY 2023 IPPS Final Rule"); Medicare Program; Hospital Inpatient Prospective Payment Systems for Acute Care Hospitals and the Long-Term Care Hospital Prospective Payment System and Policy Changes and Fiscal Year 2024 Rates; Quality Programs and Medicare Promoting Interoperability Program Requirements for Eligible Hospitals and Critical Access Hospitals; Rural Emergency Hospital and Physician-Owned Hospital Requirements; and Provider and Supplier Disclosure of Ownership; and Medicare Disproportionate Share Hospital (DSH) Payments: Counting Certain Days Associated With Section 1115 Demonstrations in the Medicaid Fraction, 88 Fed. Reg. 58,640, 58,977–980 (Aug. 28, 2023) ("FFY 2024 IPPS Final Rule").

3.      Hospitals have challenged the Payment Reduction since it was first finalized in FFY 2020. In *Bridgeport Hosp. v. Becerra* ("*Bridgeport*"), this district court held the Secretary's FFY 2020 Payment Reduction to subsidize his inflation of the area wage index values for the lowest wage quartile of Medicare-participating acute care hospitals exceeded his statutory authority. *Bridgeport Hosp. v. Becerra*, 589 F. Supp. 3d 1, 10–15 (D.D.C. 2022). (This decision, issued on March 2, 2022, came down before the FFY 2024 rulemaking cycle.) In July 2024, the D.C. Circuit affirmed the decision, holding specifically that the Medicare Act provisions on which the Secretary seeks to rely, 42 U.S.C. §§ 1395ww(d)(3)(E) and (d)(5)(I), do not grant him the authority for the Low Wage Index Redistribution. *Bridgeport Hosp. v. Becerra*, 108 F.4th 882, 886–90 (D.C. Cir. 2024).[1]

---

[1] The D.C. Circuit also vacated the unlawful rule and ordered the district court to add an award of interest to its order. *Bridgeport*, 108 F.4th at 890–91.

4.     This case specifically challenges the FFY 2024 IPPS Final Rule, rather than the FFY 2020 IPPS Final Rule, but the substantive issue in this case is identical to that challenged in *Bridgeport*.  Importantly for purposes of this action, the Secretary elected to fund the <u>inflation</u> of wage index values for hospitals in markets with the lowest hospital wage levels in a budget neutral manner by <u>decreasing</u> by 0.2598% in 2024 the IPPS payments to <u>all</u> Medicare-participating hospitals.  *See* 88 Fed. Reg. at 59,343–44.  The effect is a redistribution of IPPS payments from <u>all</u> IPPS hospitals to fund an increase in wage payments to the quartile of hospitals in markets with the lowest hospital wage levels.  The Hospitals expect their FFY 2024 reduction to be approximately $44.7 million.  The FFY 2024 IPPS Final Rule enacts the fifth year of this policy and sets out the largest budget neutrality adjustment yet.[2]

5.     The Low Wage Index Redistribution is contrary to the Secretary's authority under the Medicare Act.  The Secretary asserted in the FFY 2024 IPPS Final Rule that he has statutory authority under 42 U.S.C. § 1395ww(d)(3)(E) to counterfactually increase the data-driven wage index.  88 Fed. Reg. at 58,978, 58,980 (referring commenters to prior discussion of policy in FFY 2020 IPPS Final Rule, 84 Fed. Reg. at 42,326–32); *see, e.g.*, 84 Fed. Reg. at 42,331 ("Because our proposal is based on the actual wages that we expect low wage hospitals to pay, it falls within the scope of the authority of section 1886(d)(3)(E).").  This statute requires the Secretary to adjust the labor-related portion of IPPS payments "for area differences in hospital

---

[2] Even more, while the Secretary in the FFY 2020 IPPS Final Rule indicated his intention that the Low Wage Index Redistribution would be a temporary policy effective for at least four (4) years, *see* 84 Fed. Reg. 42,044, 42,328 (Aug. 16, 2019), and while every court to have analyzed the Redistribution has found it unlawful, *see infra* ¶¶ 64–71, the Secretary in his FFY 2025 IPPS Final Rule finalized an extension of the policy for at least three (3) more years beginning in FFY 2025, with an even larger budget neutrality adjustment of 0.2843%.  Medicare and Medicaid Programs and the Children's Health Insurance Program; Hospital Inpatient Prospective Payment Systems for Acute Care Hospitals and the Long-Term Care Hospital Prospective Payment System and Policy Changes and Fiscal Year 2025 Rates, 89 Fed. Reg. 68,986, 69,948 (Aug. 28, 2024).  However, before the policy went into effect for FFY 2025, the Secretary, in an Interim Final Rule, removed the Payment Reduction from the FFY 2025 standardized amounts.  *See* Medicare Program; Changes to the Fiscal Year 2025 Hospital Inpatient Prospective Payment System (IPPS) Rates Due to Court Decision, 89 Fed. Reg. 80,405 (Oct. 3, 2024).

wage levels" through a "factor" (the wage index) that "reflect[s] the relative hospital wage level in the geographic area of the hospital compared to the national average hospital wage level."  42 U.S.C. § 1395ww(d)(3)(E).  The Secretary must "update" the wage index annually "on the basis of a survey . . . of the wages and wage-related costs of [IPPS-participating] hospitals in the United States."  *Id.*  In accordance with this requirement, the Secretary collects wage data from every IPPS hospital to create the annual Medicare IPPS wage index.  42 U.S.C. § 1395ww(d)(3)(E) <u>does not</u> authorize the Secretary to alter the wage index based on anything other than the <u>actual</u> wage data collected under subsection (d)(3)(E)(i) and, thus, does not authorize the Secretary to redistribute IPPS payments from all hospitals to those hospitals in markets with the lowest hospital wage levels in an attempt to <u>influence</u> hospital labor markets or otherwise.  In short, subsection (d)(3)(E) authorizes the Secretary to update the wage index, but only based on actual wage data.

6.    The Low Wage Index Redistribution is also arbitrary and capricious.  The Secretary contends that this Redistribution is necessary to address the lag in time between when hospitals increase wages and when IPPS payments are increased to reflect the higher wage costs.  *See* FFY 2020 IPPS Final Rule, 84 Fed. Reg. at 42,326.  This time lag, however, applies equally to all hospitals and is required by the statutory requirement for the wage index to be based on a survey of wage costs.  Moreover, the Secretary's purpose in adopting the Redistribution, *i.e.*, to provide additional funding to allow low wage index hospitals to pay higher wages, does not justify the shift in Medicare payments because (a) the Secretary is statutorily barred from attempting to influence hospital labor markets through the wage index and (b) the Secretary cannot assure that wages actually will increase because he did not require low wage index hospitals to use the additional funds to pay wages—the funds can be used for any purpose.  Further, the Secretary relied on the assertion that the Redistribution actually <u>increases</u> the accuracy of the wage index.  84 Fed. Reg. at 42,327.  But this assertion is not supported by any inaccuracy in the data concerning existing labor market conditions.  Rather, the Redistribution itself causes the wage index values for one-quarter of IPPS hospitals to be inaccurate through the

Secretary's post-data adjustment based on the hospital wages that he speculates may be paid in these labor markets in the event wage index values are increased, without any supporting data and without any requirement that the increased payments resulting from the increased wage index values will be used to increase wages.

7.      As he did in the FFY 2020, FFY 2021, FFY 2022, and FFY 2023 IPPS Rulemakings, the Secretary asserted in the FFY 2024 IPPS Final Rule that the Payment Reduction to the standardized amounts for all hospitals to pay for the counterfactually increased wage index values for one quarter of the hospitals is authorized under 42 U.S.C. § 1395ww(d)(3)(E) or, in the alternative, under his "exceptions and adjustments" authority at 42 U.S.C. § 1395ww(d)(5)(I)(i).  *See* 88 Fed. Reg. at 58,978–79  Neither of these provisions, however, authorize the Secretary to violate Congress' mandates concerning the development and implementation of the wage index system.

8.      The Hospitals, therefore, respectfully ask this Court to vacate the 0.2598% Payment Reduction imposed in FFY 2024, and order the Secretary to recalculate the Hospitals' FFY 2024 IPPS payments after removing the effect of the Payment Reduction, and make the additional FFY 2024 IPPS payments due to the Hospitals plus interest calculated under 42 U.S.C. § 1395oo(f)(2) and/or 42 U.S.C. § 1395g(d).

## JURISDICTION AND VENUE

9.      This Court has jurisdiction under 42 U.S.C. § 1395oo(f) (appeal of final Medicare program agency action), 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1361 (mandamus).

10.      Venue lies in this judicial district under 42 U.S.C. § 1395oo(f)(1) and 28 U.S.C. § 1391.

## PARTIES

11.      At all times relevant to this action, the Hospitals were Medicare-participating, general acute-care hospital-providers under the Medicare program.  The Hospitals with their Medicare provider numbers are set forth in Exhibit 1 (at 19–44) and Exhibit 2 (at 25–49), which contains the "Schedules of Providers" from the underlying administrative appeals.  Although

some of the Hospitals have been known by various names over the years, on the Schedules of Providers, the Hospitals usually are listed by their "dba" only and can be identified definitively by their Medicare provider numbers. As shown in the Schedules of Providers, the Hospitals' fiscal years sometimes are not the same as the FFY. One FFY may overlap with two hospital fiscal years. If so, then only a portion of the hospital's fiscal years fall within each of the FFYs that are the subject of this lawsuit. For example, for a hospital's fiscal year that ends on December 31, the period of FFY 2024 from October 1, 2023 through December 31, 2023, would fall within the hospital's fiscal year 2023, and the period of FFY 2024 from January 1, 2024 through September 30, 2024, would fall within the hospital's fiscal year 2024.

12.     Defendant Xavier Becerra is the Secretary of the Department of Health and Human Services, the federal department which includes the Centers for Medicare & Medicaid Services ("CMS"). The Secretary, the federal official responsible for administration of the Medicare program, has delegated that responsibility to CMS.

## THE MEDICARE APPEALS PROCESS

13.     If a provider is dissatisfied with a "final determination" as to the amount of its Medicare IPPS payments, the provider may appeal to the Provider Reimbursement Review Board ("PRRB") if it meets the requirements set forth in 42 U.S.C. § 1395oo(a), including that the "amount in controversy is $10,000 or more," and "such provider files a request for a hearing within . . . 180 days after notice of the Secretary's final determination." 42 U.S.C. § 1395oo(a)(1)(A)(ii), (2), (3). A group of providers may bring such an appeal if the matter in controversy involves a common question of fact or interpretation of law or regulations and the amount in controversy is, in the aggregate, $50,000 or more. 42 U.S.C. § 1395oo(b).

14.     The publication of IPPS rates in the Federal Register, including the wage indices, constitutes a "final determination" that may be appealed to the PRRB. 42 U.S.C. § 1395oo(a). The PRRB lacks the authority to adjudicate the validity of the Secretary's regulations and CMS Rulings. 42 C.F.R. § 405.1867.

15.     If a hospital's jurisdictionally proper appeal involves a question of law that the PRRB is without authority to decide, the PRRB may, through its own motion or upon the request of the hospital, grant expedited judicial review ("EJR") of the appeal in accordance with 42 U.S.C. § 1395oo(f)(1).  If EJR is granted, a hospital may seek judicial review of the final determination without a PRRB hearing.  *Id.*

16.     Judicial relief is available under the equitable remedy of mandamus where a hospital has a clear right to the relief sought and the Secretary has a defined and non-discretionary duty to honor that right.  *See Monmouth Med. Ctr. v. Thompson*, 257 F.3d 807 (D.C. Cir. 2001).

## THE APA

17.     Under 42 U.S.C. § 1395oo(f)(1), an action brought for judicial review after the PRRB orders EJR "shall be tried pursuant to the applicable provisions under chapter 7 of title 5 . . ." of the U.S. Code, which contains the APA.  Under the APA, a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  Furthermore, a "reviewing court shall hold unlawful and set aside agency action, findings, and conclusions found to be . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."  5 U.S.C. § 706(2)(C).

18.     Additionally, a "reviewing court shall hold unlawful and set aside agency action, findings, and conclusions found to be . . . without observance of procedure required by law."  5 U.S.C. § 706(2)(D).  The APA requires that the agency provide notice of proposed rulemaking, afford interested parties an opportunity to comment on the proposed rulemaking, and consider the relevant matters presented.  *See* 5 U.S.C. § 553.

## PROCEDURAL BACKGROUND

19.     This action arises from thirty PRRB common issue related party ("CIRP") group appeals and one non-CIRP optional group appeal challenging the Hospitals' IPPS payments for FFY 2024, all on the grounds that those payments were improperly understated as a result of the

Low Wage Index Redistribution.  Each of the Hospitals appealed the Low Wage Index
Redistribution in the FFY 2024 IPPS Final Rule by filing timely and jurisdictionally valid
appeals in accordance with 42 U.S.C. § 1395oo.

20.     The Hospitals requested that the PRRB grant EJR on October 29, 2024, because,
although the PRRB has jurisdiction over their appeals, the PRRB lacks the authority to review
the validity of the Payment Reduction at issue.

21.     The PRRB's November 25, 2024 letter found it had jurisdiction over the
Hospitals' appeals (those in twenty-two of the CIRP groups) and granted these Hospitals' EJR
request for FFY 2024.  A copy of this letter is attached as Exhibit 1.

22.     The PRRB's November 26, 2024 letter found it had jurisdiction over all but one
of the Hospitals[3] in the remaining nine Group Appeals and granted these Hospitals' EJR request
for FFY 2024.  A copy of this letter is attached as Exhibit 2.

23.     With respect to certain Hospitals in these nine Group Appeals, the Medicare
Contractor filed Substantive Claim Challenges regarding specific cost reporting periods.  Exhibit
2 at 8–10.  In the Board's November 26, 2024 EJR Decision, the PRRB identified the "specific
Participants and FYEs being challenged in each case (the "Challenged Participants")" in
Appendix B to the EJR Decision.  *Id*. at 9; 23–24.  The PRRB conducted the substantive claim
challenge review and made findings of facts as to Hospitals in seven of those nine Group
Appeals.  *Id*. at 8.  As above, in one Group Appeal, Case 24-0735GC, the Board dismissed a
hospital, West Covina Medical Center (05-0096), for lack of jurisdiction.  *Id.* at 16–17.  In the
final Group Appeal, Case 24-0733GC, the PRRB found that the Substantive Claim Challenge
was untimely, and thus the PRRB declined to consider it or make any related findings of fact.  *Id*.
at 15–16.

---

[3] The Board dismissed one hospital, West Covina Medical Center (05-0096), for lack of
jurisdiction.  This hospital is not included in this complaint.

24.     As the Challenged Participants described in their responses to the Medicare Contractors' Substantive Claim Challenges, the substantive claim requirement is invalid and cannot be applied generally or to these Group Appeals challenging the Secretary's Federal Register determination that cuts across all IPPS payment rates.  Nevertheless, the PRRB found that the Challenged Participants "failed to include 'an appropriate claim for the specific item' that is the subject of their respective group appeals as required under 42 C.F.R. § 413.24(j)(1)" *except for* Case 24-0733GC, for which no timely certification of a substantive claim challenge was filed and thus the Board found that its obligation to make findings of fact under 42 C.F.R. § 405.1873 had not been triggered for the providers in this Group Appeal.  *Id.* at 20 (emphasis in original).  For those Hospitals that the PRRB specifically "found failed to include 'an appropriate claim for the specific item' that is the subject of their respective group appeals," the Board granted EJR to challenge the validity of 42 C.F.R. §§ 413.24(j) and 405.1873.  *Id.* at 21.

25.     This action is timely filed within 60 days of the PRRB's EJR decisions under 42 U.S.C. § 1395oo(f).

## **GENERAL BACKGROUND OF THE MEDICARE PROGRAM**

26.     The Medicare Act establishes a system of health insurance for the aged, disabled, and individuals with end-stage renal disease.  42 U.S.C. § 1395c.  The Hospitals entered into written agreements with the Secretary to provide hospital services to Medicare-eligible individuals as "provider[s] of services" under the Medicare Act.  42 U.S.C. § 1395cc.

27.     The Medicare program is federally funded and administered by the Secretary through CMS and its contractors.  *See* 42 U.S.C. § 1395kk; Health, Education, and Welfare, Reorganization Order, 42 Fed. Reg. 13,262 (Mar. 9, 1977).

28.     The Medicare program consists of Part A, which covers inpatient hospital services and certain other institutional services; Part B, which covers physician services and certain outpatient services; Part C, which covers managed health care plans; and Part D, which provides prescription drug coverage.  Only Part A is at issue in this action.

29.     Part A services are furnished to Medicare beneficiaries by "providers" of services, including the Hospitals, that have entered into written provider agreements with the Secretary, pursuant to 42 U.S.C. § 1395cc, to furnish hospital services to Medicare beneficiaries.  CMS pays providers participating in Part A of the Medicare program for covered services rendered to Medicare beneficiaries through "Medicare Administrative Contractors" ("MACs"), which are agents of the Secretary.  Each Medicare-participating hospital is assigned to a MAC.  42 U.S.C. § 1395h.  The amount of the Medicare Part A payment to a hospital for services furnished to Medicare beneficiaries is determined by its MAC based on instructions from CMS.

30.     CMS implements the Medicare program, in part, through the issuance of official Rulings.  *See* 42 C.F.R. § 401.108.  In addition to the substantive rules published by the Secretary in the Code of Federal Regulations and the Rulings, the Secretary issues other subregulatory documents to implement the Medicare program, including the IPPS, which generally do not have the force and effect of law.  The Medicare Act requires that "[n]o rule, requirement, or other statement of policy . . . that establishes or changes a substantive legal standard governing the scope of benefits [or] the payment for services . . . [under Medicare] shall take effect unless it is promulgated by the Secretary by regulation . . . ."  42 U.S.C. § 1395hh(a)(2).  Thus, the Medicare Act prohibits the application of any rule or policy that establishes or changes a substantive legal standard governing the payment for service, unless it is promulgated by the Secretary through notice-and-comment rulemaking.

A.     **Medicare Cost Report Requirements**

31.     Each Medicare participating hospital annually files with its MAC a Medicare "cost report," based on the hospital's fiscal year end.  *See Oakland Physicians Med. Ctr. v. Azar*, 330 F. Supp. 3d 391, 394 (D.D.C. 2018) (citing 42 C.F.R. §§ 413.20(c), 413.24(f)).  Cost reports are generally due to be filed with the MAC within 5 months after the end of the hospital's fiscal year.

32.     Effective for cost reporting periods beginning January 1, 2016, CMS's regulation governing the content of cost reports states in relevant part:

In order for a provider to receive or potentially qualify for reimbursement for a specific item for its cost reporting period, the provider's cost report, whether determined on an as submitted, as amended, or as adjusted basis (as prescribed in paragraph (j)(3) of this section), must include an appropriate claim for the specific item, by . . .

. . .

Self-disallowing the specific item in the provider's cost report, if the provider seeks payment that it believes may not be allowable or may not comport with Medicare policy (for example, if the provider believes the contractor lacks the authority or discretion to award the reimbursement the provider seeks for the item), by following the procedures (set forth in paragraph (j)(2) of this section) for properly self-disallowing the specific item in the provider's cost report as a protested amount.

42 C.F.R. § 413.24(j)(1) (the "Self-Disallowance Regulation").  The Self-Disallowance Regulation states that a hospital may self-disallow items of reimbursement by (1) including "an estimated reimbursement amount for each specific self-disallowed item in the protested amount line (or lines) of the provider's cost report" and (2) attaching "a separate work sheet to the provider's cost report for each specific self-disallowed item, explaining why the provider self-disallowed each specific item (instead of claiming full reimbursement in its cost report for the specific item) and describing how the provider calculated the estimated reimbursement amount for each specific self-disallowed item."  *Id.* § 413.24(j)(2).

33.    A companion regulation to the Self-Disallowance Regulation purports to prohibit a hospital from receiving reimbursement for any item that it did not claim in its cost report by, for example, self-disallowing the item.  *See* 42 C.F.R. § 405.1873(b) (directing the PRRB to review a challenge to "whether the provider's cost report included an appropriate claim for the specific item under appeal," make "specific findings of fact and conclusions of law . . . on the question of whether the provider's cost report included an appropriate claim for the specific item . . . ."); *id.* § 405.1873(f)(2)(ii) (stating that if the hospital's cost report "[d]id not include an appropriate cost report claim for the specific item under appeal, the specific item is not reimbursable").

**B.     IPPS Payment**

34.     Effective for cost reporting years beginning on or after October 1, 1983,

Congress enacted statutes requiring the Secretary to implement the IPPS to pay hospitals,

including the Hospitals, for the operating costs related to providing inpatient hospital services to

Medicare beneficiaries.

35.     Under the IPPS, Medicare payments for hospital operating costs are not based

directly on the costs actually incurred by the hospitals.  Rather, they are based on predetermined

rates that take into account the diagnosis of the patient determined at the time of discharge from

the inpatient stay, subject to certain payment adjustments.  42 U.S.C. § 1395ww(d)(1)-(5).  The

IPPS relies on a national base payment rate or "standardized amount" that is adjusted for

geographic factors and then multiplied by a weighting factor determined based on the patient's

diagnoses.

36.     The standardized amount consists of a labor-related portion and a nonlabor-

related portion.  The labor-related portion is the proportion "of hospitals' costs which are

attributable to wages and wage-related costs."  42 U.S.C. § 1395ww(d)(3)(E).  The labor-related

portion for FFY 2024 is 67.6% of the standardized amount.  88 Fed. Reg. at 59,355.  However,

Congress set the labor-related portion at 62% of the standardized amount for hospitals with a

wage index less than or equal to one (1.0000), 42 U.S.C. § 1395ww(d)(3)(E)(ii).

**C.     The Area Wage Index Adjustment**

37.     The Secretary is required to adjust the labor-related portion of the standardized

amount "for area differences in hospital wage levels . . . ."  42 U.S.C. § 1395ww(d)(3)(E).  To do

so, the Secretary must calculate "a factor . . . reflecting the relative hospital wage level in the

geographic area of the hospital compared to the national average hospital wage level."  42 U.S.C.

§ 1395ww(d)(3)(E).  This factor is known as the wage index value.

38.     The Secretary is required to update the wage index annually "on the basis of a

survey conducted by the Secretary (and updated as appropriate) of the wages and wage-related

costs of subsection (d) hospitals in the United States."  42 U.S.C. § 1395ww(d)(3)(E).

("Subsection (d) hospitals" are those hospitals paid under the IPPS.)  In addition, "[n]ot less

often than once every 3 years the Secretary (through such survey or otherwise) shall measure the

earnings and paid hours of employment by occupational category . . . ."  *Id.*  The Secretary sets

forth wage index determinations in the annual IPPS final rule.  *See* 88 Fed. Reg. at 58,958-59.

Annual wage index updates must not increase aggregate payments and, thus are budget neutral:

"Any adjustments or updates made under [42 U.S.C. § 1395ww(d)(3)(E)] for a fiscal year . . .

shall be made in a manner that assures that the aggregate payments under [42 U.S.C.

§ 1395ww(d)] in the fiscal year are not greater or less than those that would have been made in

the year without such adjustment."  42 U.S.C. § 1395ww(d)(3)(E).

39.     To implement this statute, the Secretary obtains the actual wage data used to

calculate the wage index from the Medicare cost report that each Medicare-participating hospital

is required to file annually.  These data are taken from the Hospital Wage Index Occupational

Mix Survey, payroll records, contracts, and other wage-related documentation.  The data are

reviewed and evaluated by Medicare Administrative Contractors ("MACs") in a 16 to 18 month

"Hospital Wage Index Development" process in order to ensure that the data, and therefore the

wage index values, are accurate.  In computing the wage index, the Secretary uses the data that

result from the Hospital Wage Index Development process, determines an "average hourly

wage" for each labor market area (total wage costs divided by total hours for all hospitals in the

geographic area), which is compared against a national average hourly wage (total wage costs

divided by total hours for all hospitals nationally).  *See* 88 Fed. Reg. at 58,966–67.

**D.    The Secretary's Exceptions and Adjustments Authority**

40.     The Secretary is authorized to "provide by regulation for such other exceptions

and adjustments to such payment amounts under [42 U.S.C. § 1395ww(d)] as the Secretary

deems appropriate."  42 U.S.C. § 1395ww(d)(5)(I)(i).

41.     Subsection (d)(5)(I)(ii) explicitly authorizes the Secretary to make budget

neutrality adjustments when he makes an "adjustment" for transfer cases.  "In making

adjustments under clause (i) *for transfer cases* . . . the Secretary may make adjustments to each

of the average standardized amounts determined under paragraph (3) to assure that the aggregate payments made under this subsection for such fiscal year are not greater or lesser than those that would have otherwise been made in such fiscal year." *Id.* at § 1395ww(d)(5)(I)(ii) (emphasis added). Medicare applies a special IPPS payment methodology for transfer cases (*e.g.*, cases where patients are transferred to another acute care hospital for further care before inpatient hospital care is completed), *see* 42 C.F.R. § 412.4, and subsection (d)(5)(I)(ii) was adopted to permit the Secretary to adjust payments for transfer cases in a budget neutral manner. The statute provides no similar authority for budget neutrality adjustments where the Secretary adopts an exception or adjustment for non-transfer cases under subsection (d)(5)(I)(i).

42. Congress has not authorized a budget neutrality adjustment for any other type of exception or adjustment adopted under subsection (d)(5)(I)(i).

## THE LOW WAGE INDEX REDISTRIBUTION IN THE FFY 2020, 2021, 2022, 2023, AND 2024 IPPS RULEMAKINGS

### A. Proposed Low Wage Index Redistribution

43. In the FFY 2020 IPPS Proposed Rule (the "Proposed Rule"), the Secretary stated that there is a growing disparity between low and high wage index hospitals. *See* Medicare Program; Hospital Inpatient Prospective Payment Systems for Acute Care Hospitals and the Long-Term Care Hospital Prospective Payment System and Proposed Policy Changes and Fiscal Year 2020 Rates; Proposed Quality Reporting Requirements for Specific Providers; Medicare and Medicaid Promoting Interoperability Programs Proposed Requirements for Eligible Hospitals and Critical Access Hospitals, 84 Fed. Reg. 19,158, 19,393–95 (May 3, 2019); 88 Fed. Reg. at 58,977–78 (stating similar in the FFY 2024 Final Rule). Referencing public comments received in response to a Request for Information on wage index disparities included in the FFY 2019 IPPS Proposed Rule, the Secretary in the FFY 2020 Proposed Rule asserted that, because the wage data used to create the wage index come from hospital cost reports, it "allows hospitals in States with significantly higher wage indexes to maintain and improve their favorable position in the current system by setting higher than market value wages for their employees." 84 Fed.

Reg. at 19,394. The Secretary continued that "higher wage hospitals can, by virtue of higher Medicare payments, afford to pay wages that allow them to continue as a high wage index State." *Id.* Whereas, "[l]ow wage index States . . . cannot afford to pay wages that would allow their hospitals to climb back toward the median wage index[,]" which over time, the Secretary alleges, widens the gap between the high and low wage hospitals. *See id.* The Secretary, however, did not challenge that the wage index values for higher and lower wage hospitals were based on actual wage data.

44.    In the Proposed Rule, the Secretary sought to counterfactually manipulate wage index disparities through a number of proposals, including the Low Wage Index Redistribution. As proposed, the Low Wage Index Redistribution would array the wage indices across the nation from lowest to highest, break them into quartiles, and then would implement a post-data increase of the data-driven wage index values for the hospitals in the lowest quartile by half the difference of the (a) the actual wage index value as calculated by CMS and the MAC per the Hospital Wage Index Development process and (b) the 25th percentile of wage index values. *See* 84 Fed. Reg. at 19,394–95.[4]

45.    The Secretary proposed to implement the Low Wage Index Redistribution in a budget neutral manner through a corresponding counterfactual reduction to the wage index values of the highest quartile wage index hospitals. 84 Fed. Reg. at 19,395–96. The Secretary maintained that this "budget neutrality adjustment" had two key merits: (a) "by compressing the wage index for hospitals on the high and low ends, that is, those hospitals with a low wage index and those hospitals with a high wage index, such a methodology increases the impact on existing wage index disparities more than by simply addressing one end," and (b) "such a methodology ensures those hospitals in the middle, that is, those hospitals whose wage index is not considered

---

[4] The Proposed Rule used the following example to illustrate the proposed adjustment: "[A]ssume the otherwise applicable FY 2020 wage index value for a geographically rural hospital in Alabama is 0.6663, and the 25th percentile wage index value for FY 2020 is 0.8482. Half the difference between the otherwise applicable wage index value and the 25th percentile wage index value is 0.0910 (that is, (0.8482 – 0.6663)/2))." *Id.* at 19,395.

high or low, do not have their wage index values affected by this proposed policy." *Id.* at 19,395. In the Proposed Rule, the Secretary also discussed alternatives to the proposed budget neutrality adjustment, including "applying a budget neutrality factor to the standardized amount rather than focusing the adjustment on the wage index of high wage index hospitals." 84 Fed. Reg. at 19,672.

**B.**     **The Low Wage Index Redistribution in the FFY 2020 IPPS Final Rule**

46.     More than 7,800 comments were submitted regarding the Proposed Rule, many of which concerned the reduction to the highest quartile wage index values to pay for the Low Wage Index Redistribution. In the FFY 2020 IPPS Final Rule, the Secretary finalized the proposed Low Wage Index Redistribution but made some significant changes. 84 Fed. Reg. at 42,326–28.

47.     The Secretary justified adoption of the Low Wage Index Redistribution by stating that it "would provide certain low wage index hospitals with an opportunity to increase employee compensation without the usual lag in those increases being reflected in the calculation of the wage index." 84 Fed. Reg. at 42,326; *see also* 84 Fed. Reg. at 42,327–28 (referring on numerous occasions to providing "an opportunity for low wage index hospitals to increase" wages). The Secretary continued that his "proposal to increase the wage index for low wage index hospitals will increase the accuracy of the wage index by appropriately reflecting the increased employee compensation that would occur (to attract and maintain a sufficient labor force) if not for the lag in the process between when a hospital increases its employee compensation and when that increase is reflected in the calculation of the wage index." 84 Fed. Reg. at 42,327. The Secretary did not provide any data or study supporting his speculation that hospitals would increase employee compensation if not for the lag. The Secretary did not assert or provide any rationale indicating that hospitals with wage index values above the lowest quartile do not experience this "lag in the process" in the same manner as hospitals in the lowest quartile. The Secretary explained that "this policy will be effective for at least 4 years, beginning in FY 2020,

in order to allow employee compensation increases implemented by these hospitals sufficient time to be reflected in the wage index calculation." *Id.* at 42,048.

48.    The Secretary further justified his adoption of the Low Wage Index Redistribution by asserting for the first time in the FFY 2020 IPPS Final Rule that the policy will *increase* the accuracy of the wage index.  He stated, "the intent of [the Low Wage Index Redistribution] is to increase the accuracy of the wage index as a technical adjustment, and not to use the wage index as a policy tool to address non-wage issues related to rural hospitals, or the laudable goals of the overall financial health of hospitals in low wage areas or broader wage index reform."  84 Fed. Reg. at 42,331.  The Secretary continued that, as a result of the Low Wage Index Redistribution, "the wage index for low wage index hospitals will appropriately reflect the relative hospital wage level in those areas compared to the national average hospital wage level[ b]ecause our proposal is based on the actual wages that we expect low wage hospitals to pay . . . ." *Id.*

49.    Following significant criticism from commenters to the Low Wage Index Redistribution as proposed, the Secretary stated in the FFY 2020 IPPS Final Rule that "some commenters have presented reasonable policy arguments that we should consider further regarding the relationship between our proposed budget neutrality adjustment targeting high wage hospitals and the design of the wage index to be a relative measure of the wages and wage-related costs of [IPPS participating] hospitals in the United States."  84 Fed. Reg. at 42,331. Based on this feedback, the Secretary decided "not [to] finaliz[e] our proposal to target that budget neutrality adjustment on high wage hospitals."  *See id.*  Instead, the Secretary decided to implement one of the alternatives identified in the Proposed Rule and "finaliz[ed] a budget neutrality adjustment to the national standardized amount for all hospitals so that the increase in the wage index for low wage index hospitals . . . is implemented in a budget neutral manner."  *Id.*

50.    Thus, in the FFY 2020 IPPS Final Rule, the Secretary decreased the standardized payment amounts of all IPPS hospitals by 0.2016% to offset the additional payments that hospitals in the lowest wage index quartile would receive under the Low Wage Index Redistribution.  84 Fed. Reg. at 42,622, as corrected by 84 Fed. Reg. at 53,607.  The result of this

budget neutrality standardized rate reduction is that all IPPS hospitals receive a 0.2016%
reduction to their IPPS payments.

51.    The Secretary asserted in the FFY 2020 IPPS Final Rule that he had the authority
to adopt the Low Wage Index Redistribution under the wage index statute, 42 U.S.C.
§ 1395ww(d)(3)(E), which he described as "giv[ing] the Secretary broad authority to adjust for
area differences in hospital wage levels . . . ." 84 Fed. Reg. at 42,329.  The Secretary asserted
that the Low Wage Index Redistribution "will increase the accuracy of the wage index" and
therefore stated his summary disagreement with commenters' assertions that the policy (a)
"disregards accurately reported wage data," and (b) "is beyond the authority granted to the
agency under section [1395ww(d)(3)(E)]."  *Id.* at 42,331.

52.    Although the Secretary appeared to suggest that the Low Wage Index
Redistribution is also authorized under 42 U.S.C. § 1395ww(d)(5)(I), *see* 84 Fed. Reg. at 42,329
("We stated in the proposed rule that we believe we have authority to implement our lowest
quartile wage index proposal . . . and our budget neutrality proposal . . . under [subsection
(d)(3)(E)] . . . , and under our exceptions and adjustments authority under [subsection
(d)(5)(I)].''), this isolated suggestion, presented without explanation, is wholly unsupported by
the language of subsection (d)(5)(I), which only permits exceptions and adjustments to "payment
amounts" rather than exceptions or adjustments to any wage index value.

53.    With respect to the associated budget neutrality Payment Reduction for all IPPS
hospitals, the Secretary asserted that he was required to implement the budget neutrality Payment
Reduction under the wage index statute, 42 U.S.C. § 1395ww(d)(3)(E), but that even if not
required to do so, he believes "it would be inappropriate to use the wage index to increase or
decrease overall IPPS spending."  84 Fed. Reg. at 42,331.  Therefore the Secretary stated that, "if
it is determined that section [1395ww(d)(3)(E)] does not require the wage index to be budget
neutral, we invoke our authority at [42 U.S.C. § 1395ww(d)(5)(I)] in support of such a budget
neutrality adjustment."  84 Fed. Reg. at 42,331.  This statutory provision reads as follows: "The
Secretary shall provide by regulation for such other exceptions and adjustments to such payment

amounts under this subsection as the Secretary deems appropriate." 42 U.S.C.
§ 1395ww(d)(5)(I)(i). The Secretary paraphrased comments questioning his authority to adopt the budget neutrality adjustment under subsection (d)(5)(I) because "(1) this 'catchall' cannot be used in a manner that vitiates the language and purpose of the rest of the statute, including section [1395ww(d)(5)(A) through (H)], as there must be limits to the authority granted to CMS under this section; (2) CMS is not acting by regulation, and, therefore, is not following [subsection (d)(5)(I)]; and (3) if CMS does have the authority to make this change, this special authority is not required to be done in a budget neutral manner, as is clear from the statute where paragraph (d)(5)(I)(ii) references budget neutrality, but paragraph (d)(5)(I)(i) does not, and as is clear from relevant case law." 84 Fed. Reg. at 42,331. The Secretary did not substantively respond to these comments, and only offered in response his "belie[f that] we could use our broad authority under that provision to promulgate such an adjustment . . . ." *Id.*

### C.   The Low Wage Index Redistribution in the FFY 2021, 2022, and 2023 IPPS Final Rules

54.   After the adoption of the low wage index rule in FFY 2020, the Secretary continued the policy in the same manner in FFY 2021, 2022, and 2023. In these Final Rules, the Secretary reiterated his assertion that he has the authority to continue to implement this change under the area wage index statutory provision, codified at 42 U.S.C. § 1395ww(d)(3)(E), 85 Fed. Reg. at 58,766; 86 Fed. Reg. at 45,179; 87 Fed. Reg. at 49,007–08, and elected to implement the policy in a budget neutral manner, 85 Fed. Reg. at 58,766–67; 86 Fed. Reg. at 45,531–32; 87 Fed. Reg. 49,007–08. The Secretary continued to assert that he has the authority to implement the budget neutrality adjustment specifically under 42 U.S.C. § 1395ww(d)(3)(E); however, the Secretary continued to note that even if he did not have such authority under the cited area wage index statutory provision, he would invoke his special statutory "exceptions and adjustments" authority in support of such a budget neutrality adjustment. *See* 85 Fed. Reg. at 58,767, 86 Fed. Reg. at 45,180, and 87 Fed. Reg. at 49,007.

55.     Commenters to the FFY 2022 IPPS Proposed Rule cited to a December 2020 HHS Office of the Inspector General ("OIG") report[5] highlighting the Secretary's failure to focus the low wage index hospital policy on hospitals that may face barriers to increasing wages (*i.e.*, those with low or negative profit margins rather than higher, positive profit margins).  OIG, HHS OIG Data Brief, A-01-20-00502, at 3 (Dec. 2020), *available at* https://oig.hhs.gov/oas/reports/region1/12000502.pdf.  The OIG report showed that among 783 hospitals with area wage index values in the lowest quartile, 444 (over half) had *positive* profit margins.  *Id.* at 10–11.  The OIG identified a number of factors associated with low wage index values that were not considered by the Secretary, including whether a state expanded Medicaid (wider availability of coverage depresses uncompensated care) and the state's minimum wage. *Id.* at 9–10.  The report also emphasized profit margin variability among bottom quartile hospitals (a range of profitability between -133 percent and 47 percent, with the majority of low wage index hospitals showing positive profit margins), which the Secretary failed to explore or address.  *Id.* at 11.  The OIG report also states in response to the Secretary's "data lag" rationale, "that all hospitals participating in the IPPS . . . are subject to circularity plus the 4-year time lag, including those with the highest wage indexes."  *Id.* at 13.

56.     Pointing to the OIG Report, commenters to the FFY 2022 Proposed Rule argued that the wage index policy "is mis-targeted and ineffective," and a commenter requested that the Secretary repeal the policy "while it pursues OIG's recommendation" for further study of wage index issues.  86 Fed. Reg. at 45,179.  In response, the Secretary indicated that comments supporting the policy "indicate that many low wage hospitals are indeed helped by this policy." *Id.*  The Secretary expressed concern that targeting the policy—based on the factors identified in

---

[5] The report was the result of an audit by OIG's Office of Audit Services ("OAS").  The OAS "conducts independent audits of HHS programs . . . and provide[s] independent assessment of HHS programs and operations."  OIG, Office of Audit Services, *available at* https://oig.hhs.gov/about-oig/office-audit-services/.  OAS audits "help reduce waste, abuse, and mismanagement and promote economy and efficiency throughout HHS."  *Id.*

the OIG report or otherwise—"would not maintain the rank order in wage index values" and stated that he "believe[s] it is reasonable to conclude that our current policy will have the intended effect of providing the opportunity for low wage hospitals to increase compensation." *Id.* With respect to the OIG's conclusion that factors other than Medicare payment contribute to hospitals' wages, the Secretary stated that "Medicare payment is a contributing factor to hospital wage levels that is within the purview of CMS." *Id.* The Secretary noted that the prior years of the policy were "already promulgated . . . by the time of the OIG report" and that he "concluded that the problem needed addressing now" rather than further study. *Id.* Overall, the Secretary concluded that "while the OIG report indicates that there may be ways to refine our policy, it does not show that our current policy approach is unreasonable or suggest the policy goal we are hoping to achieve is unworthy." *Id.* Thus, despite the OIG report, the Secretary "continue[d] to believe it is appropriate to keep this policy in place while we evaluate its effectiveness." *Id.*; *see also id.* at 45,180 ("We agree with the OIG that the issue deserves more study, and we will continue to engage in that, but we believe the best course was to implement our policy while we engage in that study."). In FFY 2023, the Secretary did not acknowledge the OIG Report regarding the deficiencies of the policy nor respond to comments that brought the Report's findings to his attention, strongly encouraging the Secretary not to finalize the policy in FFY 2023.[6]

**D.    The Low Wage Index Redistribution in the FFY 2024 IPPS Final Rule**

57.    After the adoption of the Low Wage Index Redistribution in FFY 2020 and subsequent continuations of the policy in 2021, 2022, and 2023, the Secretary continued the policy in the same manner in FFY 2024. In the FFY 2024 IPPS Final Rule, the Secretary reiterated his assertion that he has the authority to continue to implement this change under the

---

[6] *See, e.g.*, Public Comment by California Hospital Association re: CMS-1771-P, FFY 2023 IPPS Proposed Rule (June 17, 2022), at 12–13, *available at* https://calhospital.org/wp-content/uploads/2022/06/CHA-Comments-FFY-2023-IPPS-Proposed-Rule-Comment-Letter-061722-Final.pdf.

area wage index statutory provision, codified at 42 U.S.C. § 1395ww(d)(3)(E). *See* 88 Fed. Reg. at 58,978, 58,980 (Secretary referring commenters to his prior discussion of his authority for the policy in the FFY 2020 IPPS Final Rule, 84 Fed. Reg. at 42,326–32).

58.    The Secretary again elected to implement his Low Wage Index Redistribution in a budget neutral manner. *See* 88 Fed. Reg. at 58,978, 58,980. The Secretary therefore decreased the standardized payment amounts of all IPPS hospitals by 0.2598% to offset the AWI increases to those hospitals in the lowest AWI quartile. *See* 88 Fed. Reg. at 59,344. The Secretary continued to assert that he has the authority to implement this budget neutrality adjustment under 42 U.S.C. § 1395ww(d)(3)(E); however, the Secretary continued to note that even if he did not have such authority under the cited area wage index statutory provision, he would invoke his special statutory "exceptions and adjustments" authority in support of such a budget neutrality adjustment. *See* 88 Fed. Reg. at 58,979.

59.    Commenters continued to express concern about the Secretary's authority to implement this change under the area wage index statutory provision. 88 Fed. Reg. at 58,980. The Secretary's response merely references his FFY 2020 IPPS Final Rule: "In response to comments stating the policy exceeds CMS's statutory authority, we refer the commenters to our prior discussion of the authority for the policy in the FY 2020 IPPS/LTCH PPS final rule (84 FR 42326 through 42332)." *Id.*

60.    Another comment further expressed that the policy "undermines the intent of the wage index by not recognizing real differences in labor costs." *Id.* In response, the Secretary primarily referred back to his responses in the FFY 2020 IPPS Final Rule and expressed the belief that "the wage index for low wage index hospitals [under the policy] appropriately reflects the relative hospital wage level in those areas compared to the national average hospital wage level." *Id.* In particular, the Secretary asserted that the policy "preserv[es] the rank order in wage index values," and thus "continues to reflect meaningful distinctions between the employee compensation costs faced by hospitals in different geographic areas." *Id.* The Secretary did not acknowledge the OIG Report regarding the deficiencies of the policy, *see ¶¶* 55–56, *supra*, nor

respond to comments that yet again brought the Report's findings to his attention, strongly encouraging the Secretary not to finalize the policy in FFY 2024.[7]

61.     Commenters also expressed that the policy is "inappropriately redistributive [and] ineffective," and that it fails to achieve its goal of helping rural hospitals as "rural hospitals in certain states do not benefit from this policy."  88 Fed. Reg. at 58,980.  In response, the Secretary cited comments from hospitals suggesting that the increased payments allowed them to raise compensation for their workers.  *Id.*  Yet, just as in prior years, the rule finalized by the Secretary for FFY 2024 continues to omit any requirement regarding the use of additional funds, and as such, does nothing more than speculate that hospitals will use the additional funds to increase wages sufficiently to mitigate wage index disparities.

62.     With respect to the budget neutrality adjustment, many commenters urged the Secretary to adopt the policy "in a non-budget-neutral manner," arguing that the "policy with a budget neutrality adjustment merely redistributes funds from one hospital to another."  *Id.* at 58,979.  Commenters also stated that some hospitals between the 22nd and 25th wage index percentile are "receiving a reduction to the wage adjusted standardized rate because the amount of benefit received is less than the cost to fund the benefit."  *Id.*  In response, the Secretary pointed to the budget neutrality requirement under 42 U.S.C. § 1395ww(d)(3)(E) and stated that he "would consider it inappropriate to use the wage index to increase or decrease overall IPPS spending."  *Id.*  He reasoned that "the wage index is not a policy tool but rather a technical adjustment designed to be a relative measure of the wages and wage-related costs of subsection (d) hospitals," and accordingly, that he would invoke his authority at 42 U.S.C. § 1395ww(d)(5)(I) in support of the budget neutrality adjustment "if it were determined that section [1395ww(d)(3)(E)] of the Act does not require the wage index to be budget neutral."  *Id.*

---

[7] *See, e.g.*, Public Comment by California Hospital Association re: CMS-1785-P, FFY 2024 IPPS Proposed Rule (June 9, 2023), at 11–12, *available at* https://calhospital.org/wp-content/uploads/2023/06/CHA-FFY-2024-IPPS-Proposed-Rule-Comment-Letter-060923-Final.pdf.

63.     Commenters also urged the Secretary not to finalize the policy for FFY 2024 and/or to eliminate the budget neutrality adjustments for FFY 2020–2023 in light of this district court's ruling in *Bridgeport*, which held that the Secretary did not have authority under 42 U.S.C. § 1395ww(d)(3)(E) or § 1395ww(d)(5)(I) to adopt the policy and related budget neutrality adjustment.  *Id.* at 58,980.  In response, the Secretary (1) acknowledged that the Court so held that he lacked authority and (2) noted that he had appealed the *Bridgeport* decision to the D.C. Circuit, which regarded FY 2020.  *Id.* at 58,980.  "After consideration of the comments [he] received," the Secretary chose to "finaliz[e] as proposed to continue the low wage index hospital policy and related budget neutrality adjustment for FY 2024."  *Id.*

**E.      Litigation Regarding the FFY 2020–2024 Low Wage Index Redistribution**

64.     Cases are currently pending in this and other courts that challenge the Low Wage Index Redistribution as enacted in FFY 2020, 2021, 2022, 2023, and 2024.  Every district court that has ruled on the Low Wage Index Redistribution has found it to be contrary to the statutory text of the Medicare Act and accordingly unlawful.  And on July 23, 2024, the first Circuit Court to hear a case on the issue, the United States Court of Appeals for the District of Columbia Circuit, affirmed that the Low Wage Index Redistribution violates the text of subsections (d)(3)(E) and (d)(5)(I).  *Bridgeport Hosp. v. Becerra*, 108 F.4th 882, 886–90 (D.C. Cir. 2024).

65.     In *Bridgeport*, this United States District Court for the District of Columbia initially granted in part the plaintiff-hospitals' motion for summary judgment and held as unlawful the same substantive issue challenged in this Complaint (*i.e.*, the Secretary's Payment Reduction in the FFY 2020 IPPS Final Rule to subsidize his inflation of the "wage index" for Medicare-participating acute care hospitals in the lowest quartile of wages nationwide).

66.     This Court held on March 2, 2022, that the Low Wage Index Redistribution was contrary to the statutory text.  *Bridgeport Hosp. v. Becerra*, 589 F. Supp. 3d 1, 10–15 (D.D.C. 2022).  As discussed in ¶¶ 72–88, *infra*, this Court concluded that the Secretary exceeded his "statutory authority when it altered the wage index for hospitals in the bottom quartile, such that those hospitals' wage index values were neither based on survey data nor rough approximations

67

of the relative hospital wage levels" "in the geographic area of [low wage

index] hospital[s] compared to the national average hospital wage level,' as required by 42

U.S.C. § 1395ww(d)(3)(E)(i))." *Id.* at 11, 15. This Court further concluded that the policy

exceeded the Secretary's authority under 42 U.S.C. § 1395ww(d)(5)(I)(i). *Id.* at 13–15.

67. This Court remanded the matter to the Secretary for further proceedings

consistent with the court's March 2, 2022 Memorandum Opinion and Order. *Bridgeport Hosp.

v. Becerra*, No. 1:20-CV-01574, 2022 WL 4487114, at *3–*4 (D.D.C. July 27, 2022).

68. Subsequently, the Secretary appealed, and the Hospitals cross-appealed, the

decision in *Bridgeport*. On July 23, 2024, the D.C. Circuit Court affirmed that the Redistribution

was unlawful under both 42 U.S.C. § 1395ww(d)(3)(E) and § 1395ww(d)(5)(I). The Court first

concluded that the Low Wage Index Redistribution violates the text of subsection (d)(3)(E), as it

"distorts the uniform factor, jettisons the definite, objective data, and departs from the actual

disparities between regional and national wages . . . in spite of a mandatory duty to follow the

formula Congress chose." *Bridgeport*, 108 F. 4th at 888. The D.C. Circuit then held that

subsection (d)(5)(I) cannot save the Redistribution, which exceeds the limits of the Secretary's

"exceptions and adjustments" authority. *Id.* at 888–90. The D.C. Circuit vacated the policy,

reasoning "an agency can't 'cure' the fact that it lacks authority to take a certain action," and

ordered the addition of an award of interest, noting that "it does not matter whether back-

payments have been calculated." *Id*. at 890–91.

69. A similar case, *Kaweah Delta Health Care District, dba Kaweah Delta Medical

Center, et al. v. Becerra* ("*Kaweah Delta*"), was filed by hospitals, including plaintiffs to this

action, in the Central District of California. In a December 22, 2022 order, the district court in

*Kaweah Delta* similarly granted in part hospitals' motion for summary judgment, holding

unlawful under both § 1395ww(d)(3)(E) and § 1395ww(d)(5)(I) the Secretary's Payment

Reduction in the FFY 2020 IPPS Final Rule to subsidize his inflation of the FFY 2020 area wage

index for Medicare-participating acute care hospitals in the lowest quartile of wages nationwide

and remanding the case to the Secretary.  *Kaweah Delta v. Becerra*, No. 2:20-cv-06564, 2022

WL 18278175, at *13 (C.D. Cal. Dec. 22, 2022).

70.    The Secretary appealed and the hospitals cross-appealed the *Kaweah Delta* order

to the United States Court of Appeals for the Ninth Circuit.  The parties' briefing has concluded

and oral argument was held on February 16, 2024, before the United States Court of Appeals for

the Ninth Circuit.  *See Kaweah Delta Health Care District, dba Kaweah Delta Medical Center,*

*et al. v. Becerra*, Nos. 23-55157, 23-55209 (consolidated) (9th Cir.).

71.    In addition to the lead FFY 2020 cases on this issue, cases are currently pending

in this Court challenging the FFY 2020, 2021, 2022, 2023, and 2024 iterations of the policy.  *See*

*Galen Hospital Alaska, Inc. dba Alaska Regional Hospital, et al. v. Becerra*, No. 1:22-cv-02904

(D.D.C.) ("*Galen I*") (challenging FFY 2020); *Galen Hospital Alaska, Inc. dba Alaska Regional*

*Hospital, et al. v. Becerra*, No. 1:22-cv-03085 (D.D.C.) ("*Galen II*") (challenging FFYs 2021

and 2022); *Galen Hospital Alaska, Inc. dba Alaska Regional Hospital, et al. v. Becerra*, No.

1:24-cv-00060 (D.D.C.) ("*Galen III*") (challenging FFY 2023); *Galen Hospital Alaska, Inc. dba*

*Alaska Regional Hospital, et al. v. Becerra*, No. 1:24-cv-02483 (D.D.C.) ("*Galen IV*")

(challenging FFY 2024); *San Bernardino County on behalf of Arrowhead Regional Medical*

*Center, et al. v. Becerra,* No. 1:24-cv-02781 (D.D.C.) ("*San Bernardino*") (challenging FFYs

2020–2023).  The *Galen I, II, and III* cases remain stayed in this Court, and *Galen IV* and *San*

*Bernardino* are currently in their elementary stages.

## THE LOW WAGE INDEX REDISTRIBUTION VIOLATES THE MEDICARE ACT

72.    The Low Wage Index Redistribution in the FFY 2024 IPPS Final Rule is invalid

on several grounds, including, but not limited to, that it exceeds statutory authority, contradicts

the wage index congressional mandate, was developed in an arbitrary and capricious manner,

lacks support from substantial evidence, and is otherwise defective both procedurally and

substantively.  *See Bridgeport*, 589 F. Supp. 3d at 15 (holding the Secretary exceeded his

"statutory authority when it altered the wage index for hospitals in the bottom quartile, such that

those hospitals' wage index values were neither based on survey data nor rough approximations of the relative hospital wage levels"); *Bridgeport*, 108 F.4th at 886–90 (affirming same).

**A.    The Low Wage Index Redistribution Is Beyond CMS's Authority under 42 U.S.C. § 1395ww(d)(3)(E)**

*(1)    The Secretary's Redistribution Is Contrary to the Plain Language of 42 U.S.C. § 1395ww(d)(3)(E)*

73.    In finalizing the Low Wage Index Redistribution, the Secretary asserted that he has the legal authority under 42 U.S.C. § 1395ww(d)(3)(E) to increase the wage index values for hospitals in the lowest quartile above the values that were calculated based on actual wage data. *See* 88 Fed. Reg. at 58,978, 58,980.  Subsection (d)(3)(E) provides a process for adjusting hospital payments to account "for area differences in hospital wage levels by a factor (established by the Secretary) reflecting the relative hospital wage level in the geographic area of the hospital compared to the national average hospital wage level," requires that factor to be updated annually "on the basis of a survey conducted by the Secretary (and updated as appropriate) of the wages and wage-related costs of [IPPS-participating] hospitals in the United States," and requires those adjustments to be budget neutral.  Subsection (d)(3)(E)(i) is designed exclusively to capture "area differences in hospital wage levels" that actually exist in the marketplace and adjust the labor-related share of the IPPS payment based on these observed differences.  Nothing in subsection (d)(3)(E) or any other provision of the Medicare Act permits the Secretary to alter payment in order to *influence and skew the wage market* by altering the wage index for a subset of hospitals.  *See Bridgeport*, 589 F. Supp. 3d at 11 (holding that § 1395ww(d)(3)(E) does not give the Secretary the "authority to adjust upward the wage index values of only those hospitals in the bottom quartile in a manner that does *not* 'reflect[] the relative hospital wage level in the geographic area of [low wage index] hospital[s] compared to the national average hospital wage level,' as required by 42 U.S.C. § 1395ww(d)(3)(E)(i)).") (alterations in original).  The Low Wage Index Redistribution violates 42 U.S.C. § 1395ww(d)(3)(E) by altering wage index values for the lowest quartile so that they are not based on actual data.  *See Bridgeport*, 108 F.4th at 888 (the Low Wage Index Redistribution

"distorts the uniform factor, jettisons the definite, objective data, and departs from the actual disparities between regional and national wages . . . in spite of a mandatory duty to follow the formula Congress chose.").

74.     The Low Wage Index Redistribution is contrary to the plain language of the statute because it adjusts IPPS payment rates in a way that does not reflect the actual difference between the relative hospital wage levels in a geographic area compared to the national average. *Bridgeport*, 108 F.4th at 887 ("By using the definite article 'the' before 'relative hospital wage level' and 'national average hospital wage level,' Congress specified that each of these metrics has a single, definite, discernable value. So the wage-index factor must 'reflect' the calculated difference in two objective, discernable numbers.") (internal citations omitted).  Indeed, the Low Wage Index Redistribution is designed to do the opposite by counterfactually inflating wage index values for a quarter of IPPS hospitals.  The Secretary acknowledges this in the FFY 2020 IPPS Final Rule, when he states that the Redistribution "is based on the actual wages we <u>expect</u> low wage hospitals to pay," 84 Fed. Reg. at 42,331, rather than the actual wages paid by these hospitals.

75.     The Secretary has instituted the Hospital Wage Index Development process with detailed instructions to ensure that CMS has accurate wage index data from all IPPS hospitals with which to create the annual wage index.  CMS has invested significant resources in this process including by paying MACs to review the wage data from the Medicare cost report every year and paying for secondary auditor oversight to ensure that the data are reliable and valid. The Secretary violated his own rules by adopting the Low Wage Index Redistribution, which improperly increased the wage index for 25% of IPPS hospitals without any wage data to support the increase.

76.     The Secretary in the FFY 2024 Final Rule does not explain why or how § 1395ww(d)(3)(E) gives him broad authority to institute the Low Wage Index Redistribution, which creates wage index values for a quarter of the nation's hospitals that are not based on evidence and are, in fact, contrary to the evidence.  Rather, the wage index statute requires the

Secretary to adjust IPPS payments by a factor "reflecting the relative hospital wage level in the geographic area of the hospital compared to the national average hospital wage level" and is permitted to update this factor based only on "a survey . . . of the wages and wage-related costs" of IPPS hospitals in the United States. 42 U.S.C. § 1395ww(d)(3)(E). *See Bridgeport*, 108 F.4th at 887 ("we conclude that the wage-index provision imposes (1) a mandatory duty on HHS to make the annual wage adjustment, (2) based on a uniform factor (3) comprised of definite, objective data, (4) drawn from a survey of each hospital's wages and reflecting the disparities between regional and national wages. And that simply is not what HHS has done here."); *see also Bridgeport*, 589 F. Supp. 3d at 11 ("[N]othing in the statute suggests that Congress intended to give the agency the authority to adjust upward the wage index values of only those hospitals in the bottom quartile in a manner that does *not* 'reflect[] the relative hospital wage level in the geographic area of [low wage index] hospital[s] compared to the national average hospital wage level.'") (quoting 42 U.S.C. § 1395ww(d)(3)(E)(i)) (alterations in the original).

77.    In the FFY 2020 IPPS Final Rule, referenced by the Secretary in the FFY 2024 IPPS Final Rule to support his continued belief that he has statutory authority to promulgate the Low Wage Index Redistribution, 88 Fed. Reg. at 58,980, the Secretary stated without explanation that the policy "increases the accuracy of the wage index as a relative measure because it will allow low wage index hospitals to increase their employee compensation in ways that we would expect if there were no lag in reflecting compensation adjustments in the wage index." FFY 2020 IPPS Final Rule, 84 Fed. Reg. at 42,331; *see also* FFY 2024 IPPS Final Rule, 88 Fed. Reg. at 58,980 (stating in FY 2024 that the policy "aims to increase the accuracy of the wage index as a relative measure"). The Secretary did not assert that hospitals with wage index values above the lowest quartile do not experience this "lag in the process" in the same manner as hospitals in the lowest quartile. Indeed, when commenters in past years have pointed out that the lag between any changes in employee compensation relative to the national average applies to all IPPS hospitals, whether they are low- or high-wage hospitals, the Secretary concurred: "In response to the commenters asserting that the data lag applies equally to all hospitals, we agree

that the 4 year data lag does not apply only to hospitals in the lowest quartile; however, we believe that circularity inherent in the data lag poses a particular problem for low wage hospitals." FFY 2021 IPPS Final Rule, 85 Fed. Reg. at 58,767 (emphasis added).  There is no reason to believe that this phenomenon disproportionately impacts the lowest quartile of hospitals and, in fact, the lag might help low-wage hospitals in labor markets with falling hospital wages avoid being assigned even lower wage index values.  Moreover, Congress only authorized the Secretary under 42 U.S.C. § 1395ww(d)(3)(E) to consider survey data in updating the wage index, and therefore when adjusting payments to hospitals to account for geographic wage differences, the Medicare Act confines the Secretary to consideration of actual wage costs and not concerns for "data lag" or any other policy concerns.  Accordingly, the Secretary considered factors that Congress did not intend him to consider in promulgating the Low Wage Index Redistribution, in that the Secretary based the policy on the data lag and his speculation that hospitals in low wage areas would increase their wages if their wage indices were increased, rather than basing it on the survey data.  *Bridgeport*, 108 F.4th at 887 ("[T]he annual adjustment to the wage-index factor must be anchored to the survey of wages, and not to other policy factors that would abandon or supplant the data-driven metric prescribed by Congress.").

78.    The Secretary "is required to calculate 'the' relative wage levels of different geographic regions as compared to 'the' national average hospital wage level."  *Bridgeport*, 589 F. Supp. 3d at 11.; *see also Bridgeport*, 108 F.4th at 887 ("By using the definite article 'the' before 'relative hospital wage level' and 'national average hospital wage level,' Congress specified that each of these metrics has a single, definite, discernable value. So the wage-index factor must 'reflect' the calculated difference in two objective, discernable numbers.") (internal quotations omitted).  Moreover, "Congress's other 'use[s] of the singular—"the proportion" and "a factor"—indicate[] that the wage index must be uniformly determined and applied.'" *Bridgeport*, 589 F. Supp. 3d at 11 (quoting *Atrium Med. Ctr. v. U.S. Dep't of Health & Hum. Servs.*, 766 F.3d 560, 569 (6th Cir. 2014)).  Thus, the Secretary exceeded his authority when he "altered the wage index for hospitals in the bottom quartile, such that those hospitals' wage index

values were neither based on survey data nor rough approximations of the relative hospital wage levels." *Id.* at 15; *see also Bridgeport*, 108 F.4th at 888 (the Low Wage Index Redistribution "distorts the uniform factor, jettisons the definite, objective data, and departs from the actual disparities between regional and national wages . . . in spite of a mandatory duty to follow the formula Congress chose.").

### (2)    The Secretary's Redistribution Contradicts Congressional Purpose

79.    Congress instructed the Secretary in § 1395ww(d)(3)(E) to identify actual differences in geographic labor costs relative to the national average and to account for them in the payments to hospitals, subject only to limited statutory exceptions adopted by Congress. Over time, Congress has amended § 1395ww(d)(3)(E) to (a) add a budget neutrality adjustment as part of subsection (d)(3)(E)(i); (b)  fix the wage-related portion of the standardized amount at 62% where the wage index value is less than or equal to 1.0 in subsection (d)(3)(E)(ii); (c) impose a wage index "floor" for frontier hospitals in subsection (d)(3)(E)(iii); and (d) impose a wage index "floor" for hospitals in all-urban States in subsection (d)(3)(E)(iv).  In adopting subsection (d)(3)(E)(ii) in particular, Congress has already sought to temper the impact of the wage index on low wage index hospitals by reducing the labor-related portion of the standardized amount from 67.6% (in FFY 2024, 88 Fed. Reg. 59,355) to 62% for hospitals with a wage index value of less than the median (1.0).  Congress, however, did not authorize the Secretary to take any further steps to mitigate the impact of the wage index on low wage index hospitals.  Rather, Congress instructed that all updates to the wage index must be based on actual wage data.  *See Bridgeport*, 589 F. Supp. 3d at 15 ("HHS must use wage data to calculate the relative hospital wage levels of particular geographic regions as compared to the national average…"); *Bridgeport*, 108 F.4th at 887 ("[T]he annual adjustment to the wage-index factor must be anchored to the survey of wages, and not to other policy factors that would abandon or supplant the data-driven metric prescribed by Congress.").  Moreover, when Congress established limited wage index exceptions in subsection (d)(3)(E)(ii), (d)(3)(E)(iii), and (d)(3)(iv), it ensured that these policies would not be funded with budget neutrality payment

reductions by providing that the Secretary "shall apply" the budget neutrality provision of subsection (d)(3)(E)(i) as if clauses (ii), (iii), and (iv) "had not been enacted."  42 U.S.C. § 1395ww(d)(3)(E)(i).  In other words, Congress has reserved for itself the power to adopt exceptions to the data-driven wage index process and has only exercised this power in a non-budget neutral manner that ensures that hospitals do not pay for these exceptions through payment reductions.

80.    The Secretary has acted consistently with Congress' directives in the past by calculating the wage index based on actual wage data, subject only to those modifications specifically permitted by Congress.  Congress has not authorized the Secretary to adjust the wage index based on anything other than the actual area differences in hospital wage data, and it certainly has not authorized the Secretary to adopt a budget neutrality payment adjustment to fund the counterfactual inflation of wage index values.  Thus, the Secretary's Low Wage Index Redistribution contradicts the will of Congress.

*(3)    The Secretary's Redistribution Is* Ultra Vires

81.    Subsection (d)(3)(E) illustrates that Congress writes rules and exceptions.  In § 1395ww(d)(3)(E), Congress did both, establishing the basic requirement that the wage index must be based on actual wage data in clause (i), and adopting narrow exceptions in clauses (ii) and (iii).  These are the only exceptions that Congress made to the data-driven wage index policy required under clause (i).  Congress did not grant the Secretary the authority to institute the Low Wage Index Redistribution or craft any policy (whether disguised as a "technical adjustment," 88 Fed. Reg. 58,979, or not) to adjust the wage index.  Because the Secretary is not authorized to adjust wage index values in the absence of supporting wage data, a budget neutrality payment reduction associated with any such adjustment is likewise not authorized under § 1395ww(d)(3)(E).  As such, the Low Wage Index Redistribution is *ultra vires.*

**B.**    **The 0.2598% Payment Reduction Is Beyond CMS's Legal Authority under 42 U.S.C. § 1395ww(d)(5)(I)**

    *(1)    Section 1395ww(d)(5)(I)(i) Does Not Create a Broad Exception Allowing for the 0.2598% Payment Reduction*

82.    The Secretary stated that even if he did not have the authority under § 1395ww(d)(3)(E) to implement the Payment Reduction, he would invoke his special statutory "exceptions and adjustments" authority under 42 U.S.C. § 1395ww(d)(5)(I) to do so.  *See* 88 Fed. Reg. at 58,979.  Subparagraph (i) of this provision states "The Secretary shall provide by regulation for such other exceptions and adjustments to such payment amounts under this subsection as the Secretary deems appropriate."

83.    The use of 42 U.S.C. § 1395ww(d)(5)(I)(i) for a global rate reduction does not fit within the language, structure, or intent of the statute.  *See Bridgeport*, 589 F. Supp. 3d at 13–15 (holding that the Low Wage Index Redistribution exceeds the Secretary's authority under 42 U.S.C. § 1395ww(d)(5)(I)(i)); *Bridgeport*, 108 F.4th at 888–90 (affirming same).  The IPPS payment system is an extraordinarily detailed framework with very specific subsections and paragraphs specifying how the complicated payment methodology is to work.  Subparagraphs (A)-(H) that precede § 1395ww(d)(5)(I), identify distinct exceptions and adjustments to the payment rates prescribed under the IPPS in very specific circumstances, such as outlier cases, hospitals with indirect costs of medical education, and regional and national referral centers.  In the context of the statute as a whole, 42 U.S.C. § 1395ww(d)(5)(I)(i) does not convey sweeping authority for the Secretary to apply across-the-board rate reductions but, rather, only exceptions and adjustments of the kind similar to what appears in the preceding subparagraphs.  The Secretary cannot use § 1395ww(d)(5)(I) in a manner that vitiates the language and purpose of the rest of the statute, including § 1395ww(d)(5)(A)-(H).  There must be limits to the authority granted to CMS under this "catchall" provision or it would swallow-up the entire Medicare Act.  *See Bridgeport*, 108 F.4th at 888 ("[T]he adjustments provision in § 1395ww(d)(5)(I)(i) is a subtle device with limits that can't be used for a severe restructuring of the statutory scheme or a substantial departure from the default amounts.") (internal citations and quotations omitted).

84.     Moreover, the Secretary cannot use his "exceptions and adjustments" authority to adopt the budget neutrality adjustment in the unlawful Low Wage Index Redistribution because the Low Wage Index Redistribution itself contravenes the statutory requirements of subsection (d)(3)(E).  *Bridgeport*, 108 F.4th at 889 (the Low Wage Index Redistribution exceeds the limits of subsection (d)(5)(I) because it "does not fill a gap left by statutory silence," nor "complement" subsection (d)(3)(E), but instead "supplant[s] it with a new regime entirely") (alteration in original) (internal citations and quotations omitted).

85.     To the extent that the Secretary suggests in the alternative that he has the authority to implement the Low Wage Index Redistribution under subsection (d)(5)(I), this assertion contravenes the clear language of (d)(5)(I), which authorizes adjustments only to "payment amounts," not to any wage index value established under subsection (d)(3)(E).  *See Bridgeport*, 589 F. Supp. 3d at *15 n.11 ("The 'exceptions and adjustments' provision also authorizes adjustments only to "payment amounts," not to any wage index value established under § 1395ww(d)(3)(E)(i).").

86.     Moreover, the Low Wage Index Redistribution exceeds the Secretary's "exceptions and adjustments" authority because it contravenes the specific and detailed wage index provisions.  "Reading the general 'exceptions and adjustments' provision to allow the agency to adopt the low wage index hospital policy would gut the specific statutory provisions in place to calculate the wage index . . . [and] would render meaningless the statutory framework in place to calculate wage index levels." *Bridgeport*, 589 F. Supp. 3d at 14–15.  In short, the Secretary cannot "get around clear statutory directives by invoking the exceptions and adjustments provision," and his exceptions and adjustments authority is not "unbounded." *Id.* at 15; *Bridgeport*, 108 F.4th at 888–90 (affirming same).

   *(2)     The Secretary Did Not Act by Regulation as Required by 42 U.S.C.
            § 1395ww(d)(5)(I)*

87.     The Secretary is not acting by regulation, and, therefore, is not adhering to the requirements of § 1395ww(d)(5)(I)(i).  Subsection (d)(5)(I)(i) requires adjustments made under

this exception to be "provide[d] by regulation."  Similarly, 42 U.S.C. § 1395hh(a) requires that "[n]o rule, requirement, or other statement of policy . . . that establishes or changes a substantive legal standard governing . . . the payment for service . . . shall take effect unless it is promulgated by the Secretary by regulation. . . ."  The Secretary did not promulgate regulations to effectuate the 0.2598% Payment Reduction, but merely applied it as a rate adjustment in the preamble to the FFY 2024 IPPS Final Rule.  Thus, even if the Secretary had the authority to implement the 0.2598% Payment Reduction (which he does not), he implemented it in a way that violates the statutory requirements of its allegedly authorizing statute (and others) and, therefore, is invalid.

> *(3)    The Secretary's Exceptions and Adjustments Authority Does Not Authorize Budget Neutrality Adjustments, Except With Respect to Transfer Cases*

88.    Even if the Secretary had the authority to institute the Low Wage Index Redistribution under § 1395ww(d)(5)(I)(i) (which he does not), such exceptions and adjustments authority does not permit his implementation of the policy in a budget neutral manner.  Rather, subsection (d)(5)(I)(ii) provides the Secretary with limited authority to adopt budget neutrality adjustments only in the context of adjustments for transfer cases and does not provide any similar budget neutrality authority for any other type of adjustment.

## C.    The Secretary has Failed to Provide a Valid Rationale for the Low Wage Index Redistribution in Violation of the APA

89.    Under the APA, the Secretary is prohibited from taking actions and making findings and conclusions that are arbitrary and capricious, and conduct is considered arbitrary and capricious when it is not explained, or when it is not rationally explained.  5 U.S.C. § 706(2)(A).  Agency action is considered arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."  *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983.)  The Secretary's rationale for the Low Wage Index Redistribution violates the APA.

90.     In the FFY 2020 IPPS Final Rule, the Secretary stated that "the intent of [the Low Wage Index Redistribution] is to increase the accuracy of the wage index as a technical adjustment, and not to use the wage index as a policy tool to address non-wage issues related to rural hospitals, or the laudable goals of the overall financial health of hospitals in low wage areas or broader wage index reform." 84 Fed. Reg. at 42,331. The Secretary referred back to this reasoning in defense of the FFY 2024 IPPS Final Rule. *See* FFY 2024 IPPS Final Rule, 88 Fed. Reg. at 58,980 (referring commenters to responses in FFY 2020 IPPS Final Rule, 84 Fed. Reg. at 42,3226–32); *see also id.* at 58,979 (reiterating that "the wage index is not a policy tool but rather a technical adjustment"). It is, of course, Orwellian doubletalk for the Secretary to assert that he makes the wage index, which is required by statute to be data-driven, more accurate by changing the wage index values for 25% of IPPS hospitals so that they are not based on actual data.

91.     Further, the Secretary asserts that under this Redistribution "the wage index for low wage index hospitals appropriately reflects the relative hospital wage level in those areas compared to the national average hospital wage level," 88 Fed. Reg. at 58,980, because "it allows low wage index hospitals to increase their employee compensation in ways that <u>we would expect</u> if there were no lag between the time a hospital increases employee compensation and the time these increases are reflected in the wage index." *Id.* (emphasis added). Thus, the Secretary denies he is using the wage index as a policy tool while implicitly acknowledging that he is using the Low Wage Index Redistribution to change hospital labor markets because he expects wage payments in low-wage markets to *increase* under the policy. He emphasized that the Redistribution provides "an *opportunity* for low wage hospitals to increase their employee compensation." FFY 2020 IPPS Final Rule, 84 Fed. Reg. at 42,328 (*see also* FFY 2024 IPPS Final Rule, 88 Fed. Reg. at 58,977–78). But the Secretary does not <u>require</u> low wage hospitals to use the increased payments to pay for higher wages. The Secretary's assertion that the wage index for the lowest wage area hospitals <u>will</u> increase in the future is nothing more than wishful speculation, at best, and thus, the Redistribution lacks a factual predicate.

92.     In other words, the Secretary asserted that by making wage index values inaccurate for 25% of the nation's hospitals, he actually was making it *more* accurate because the data would reflect what the Secretary conjectures it could possibly become if low wage index hospitals adjust their wages under the policy.  This circularity is arbitrary and capricious, irrational, and does not provide a legitimate basis for the Low Wage Index Redistribution. Moreover, the rationale is unsupported by any data or studies, and the Secretary also relied on factors which Congress has not intended him to consider.  The Redistribution therefore violates the APA and is invalid.

93.     Additionally, similar to the FFY 2020 IPPS Final Rule, the FFY 2024 IPPS Final Rule failed to sufficiently address commenters' questions and concerns.  For example, in the FFY 2020 IPPS Final Rule, the Secretary paraphrased comments questioning his authority to adopt the budget neutrality adjustment under subsection (d)(5)(I) because "(1) this 'catchall' cannot be used in a manner that vitiates the language and purpose of the rest of the statute, including section [1395ww(d)(5)(A) through (H)], as there must be limits to the authority granted to CMS under this section; (2) CMS is not acting by regulation, and, therefore, is not following [subsection (d)(5)(I)]; and (3) if CMS does have the authority to make this change, this special authority is not required to be done in a budget neutral manner, as is clear from the statute where paragraph (d)(5)(I)(ii) references budget neutrality, but paragraph (d)(5)(I)(i) does not, and as is clear from relevant case law."  84 Fed. Reg. at 42,331.  In response, the Secretary merely stated his "belie[f that] we could use our broad authority under that provision to promulgate such an adjustment."  *Id.*  In the FFY 2024 IPPS Final Rule, in response to commenters' questioning of his statutory authority to adopt the policy, he simply referred commenters to his prior response in the FFY 2020 IPPS Final Rule.  *See* 88 Fed. Reg. at 58,980 (referring commenters to the FFY 2020 IPPS Final Rule, 84 Fed. Reg. at 42,326–42,332).

94.     Significantly, in the FFY 2024 IPPS Final Rule the Secretary imposes another year of his unlawful policy and budget neutrality adjustment beyond his initial predictive time period of four years.  *See* 88 Fed. Reg. at 58,979.  A commenter urged the Secretary to end "the

artificial increase in the low quartile hospitals' wage indices after four years," stating that "if [the Secretary] disagrees that four years of the policy is sufficient, [he] should better justify continuing the policy and lay out [his] criteria for evaluating the policy's potential success and at what point it should be terminated." 88 Fed. Reg. at 58,978–79. While the Secretary attempts to explain this extension given the "current lack of sufficient data with which to evaluate the [effectiveness of the] low wage index hospital policy," *id.* at 58,979, he does not provide a rational explanation as to why a policy which has not been proven effective should be extended. *See* 88 Fed. Reg. at 58,980. In fact, while the FFY 2023 IPPS Final Rule Payment Reduction was 0.1854% only one year prior, it increased to 0.2598% for FFY 2024, making it the largest Payment Reduction of all five years. This increase could just as easily reflect the failure and *in*effectiveness of the low wage hospital index policy rather than a "lack of sufficient data." *Id*. However, there is no mention of this plausible reality in the entirety of the FFY 2024 IPPS Final Rule.

## CAUSES OF ACTION

### COUNT I:
### Violation of the APA and the Medicare Act
### *(The Low Wage Index Redistribution is Contrary to Wage Index Law)*

95.     The Hospitals repeat and reallege paragraphs 1–94 as if set forth fully herein.

96.     The APA prohibits the Secretary from implementing the Medicare Act through actions, findings or conclusions that are in excess of statutory jurisdiction, authority, or limitations, or short of statutory right. 5 U.S.C. § 706(2)(C).

97.     The Secretary lacks the statutory authority to apply the Low Wage Index Redistribution in FFY 2024. The Medicare Act and regulations prescribe precise payment methodologies under the IPPS. The Low Wage Index Redistribution directly contravenes the plain language of 42 U.S.C. § 1395ww(d)(3)(E), and the implementing regulations, which require the Secretary to base the wage index on actual data. Because the Low Wage Index Redistribution violates § 1395ww(d)(3)(E) (and the implementing regulations), neither this

statute, 42 U.S.C. § 1395ww(d)(5)(I)(i), nor any other provision of law authorizes the budget neutrality Payment Reduction associated with it.

**COUNT II:**
**Violation of the APA and Medicare Act**
*(The Low Wage Index Redistribution is Unlawful Under 42 U.S.C. § 1395ww(d)(5)(I))*

98.     The Hospitals repeat and reallege paragraphs 1–97 as if set forth fully herein.

99.     The APA prohibits the Secretary from implementing the Medicare Act through actions, findings or conclusions that are in excess of statutory jurisdiction, authority, or limitations, or short of statutory right.  5 U.S.C. § 706(2)(C).

100.     The exception contained within 42 U.S.C. § 1395ww(d)(5)(I)(i) does not authorize the Secretary to inflate the wage index values for hospitals in low wage markets as the Secretary has done or to apply across-the-board 0.2598% Payment Reduction in FFY 2024, to fund the unauthorized and unlawful Low Wage Index Redistribution.  Thus, the Payment Reduction that is part of the Low Wage Index Redistribution in FFY 2024 is invalid and must be set aside.

101.     Specifically, 42 U.S.C. § 1395ww(d)(5)(I) does not permit the imposition of a budget neutrality adjustment, except in transfer cases under clause (ii).  The Low Wage Index Redistribution alters certain wage index values and is not an "adjustment[] . . . for transfer cases" that can be imposed in a budget neutral manner under subsection (d)(5)(I)(ii).  Thus, the 0.2598% budget neutrality Payment Reduction in FFY 2024 is unlawful and must be set aside.

102.     42 U.S.C. § 1395ww(d)(5)(I)(i) requires adjustments made under this exception to be "provide[d] by regulation."  Similarly, 42 U.S.C. § 1395hh(a) prohibits any rule or policy that establishes or changes a substantive legal standard governing the payment for service, unless it is promulgated by the Secretary by regulation.  The Secretary did not promulgate a regulation to effectuate the 0.2598% Payment Reduction that is part of the Low Wage Index Redistribution in FFY 2024, but merely applied it as a rate adjustment as published in the preamble to the FFY 2024 IPPS Final Rule.  Thus, the 0.2598% Payment Reduction violates the express terms of 42

U.S.C. § 1395ww(d)(5)(I)(i) and 42 U.S.C. § 1395hh(a), therefore it is invalid under the APA and must be set aside.

**COUNT III:**
**Violation of the APA and the Medicare Act**
***(The Low Wage Index Redistribution is Arbitrary and Capricious)***

103.    The Hospitals repeat and reallege paragraphs 1–102 as if set forth fully herein.

104.    The APA prohibits the Secretary from implementing the Medicare Act through actions, findings or conclusions that are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.  5 U.S.C. § 706(2)(A).

105.    In the FFY 2024 IPPS Final Rule, the Secretary reiterated his belief that the Low Wage Index Redistribution "aims to increase  the accuracy of the wage index as a relative measure because it allows low wage index hospitals to increase their employee compensation in ways that we would expect if there were no lag between the time a hospital increases employee compensation and the time these increases are reflected in the wage index…"  88 Fed. Reg. 58,980.  The Secretary did not identify any studies or data to support his rationale.  Indeed, the "data lag" cited by the Secretary impacts every IPPS hospital and, in fact, might help low-wage hospitals in labor markets with falling hospital wages by delaying the resulting reduction to their wage index values.  There is no logical reason for the Secretary to have treated the low wage index hospitals differently than all IPPS hospitals, and the Secretary did not provide an explanation.  As such, the Redistribution is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.  Thus, the 0.2598% Payment Reduction for FFY 2024 is invalid and must be set aside.

106.    In the FFY 2024 IPPS Final Rule, the Secretary failed to adequately explain the rationale for the Low Wage Index Redistribution.  In response to comments opposing and concerned about the legal authority and impact of the policy, the Secretary referred back almost exclusively to his reasoning in FFY 2020.  88 Fed. Reg. at 58,980.  In the FFY 2020 IPPS Final Rule, the justification given by the Secretary for implementing his Low Wage Index Redistribution was that it would "increase the accuracy of the wage index as a relative measure

because it allows low wage index hospitals to increase their employee compensation in ways that we would expect if there were no lag in reflecting compensation." 84 Fed. Reg. at 42,331. However, the Secretary did not rationally explain (nor could he) how increasing the wage index values for 25% of IPPS hospitals in a way that conflicts with the applicable wage data improves the accuracy of those wage values. And, in fact, in the FFY 2024 IPPS Final Rule, the Secretary appears to acknowledge that the low wage index hospital policy is different from a mere technical adjustment, referencing the worthiness of his "policy goal." 88 Fed. Reg. at 58,979.

107.    As he had in the FFY 2020 IPPS Final Rule, the Secretary continued to reiterate in the FFY 2024 IPPS Final Rule that the Low Wage Index Redistribution was not being used as a policy tool (only a technical adjustment), 88 Fed. Reg. 58,979, while also referring back to his intent that it would provide certain low wage index hospitals with a so-called "opportunity to increase employee compensation." *Id*. at 58,977–78 (referencing FFY 2020 IPPS Final Rule, 84 Fed. Reg. at 42,327 ("we note the policy is intended to provide an opportunity for low wage hospitals to increase their employee compensation, and we expect them to do so…")). The Secretary touts his expectation that hospitals will increase their employee compensation as a result of wage index increases under this policy, *id.* at 58,977–78, 58,980, but the Secretary did not require the low wage hospitals to use the increased payments to pay for higher wages. The Secretary's assertion that the wage index for the lowest wage area hospitals will increase in the future is thus unreasonable. Further, contrary to this technical correction language, the Low Wage Index Redistribution does not include more recent employee compensation data in the calculation of the wage index but, rather, arbitrarily and counterfactually increases the wage index values of certain hospitals so that they are not based on actual data. This circularity is arbitrary and capricious, irrational, and does not provide a legitimate basis for the Low Wage Index Redistribution. Moreover, the rationale is unsupported by any data or studies, is in contrast with comments submitted to the Secretary indicating the policy's lack of benefits for hospitals it is intended to help, and the Secretary relied on factors which Congress has not intended him to consider. The Redistribution therefore violates the APA and is invalid.

108.    The Secretary failed to provide a rational explanation for extending the Redistribution beyond the initially-estimated four years with increasing budget neutrality adjustments, referring only to a "lack of sufficient data" as grounds for the policy's continuation. *See* 88 Fed. Reg. at 58,979.  This vague reasoning, without more, further establishes the Redistribution as arbitrary and capricious.

**COUNT IV:**
**Violation of the APA and the Medicare Act**
***(The Secretary's Actions Under 42 U.S.C. § 1395ww(d)(5)(I) are Unlawful Because the Secretary Failed to Observe the Procedure Required by Law)***

109.    The Hospitals repeat and reallege paragraphs 1–108 as if set forth fully herein.

110.    The APA prohibits the Secretary from implementing the Medicare Act through actions, findings or conclusions that are found to be without observance of procedure required by law.  5 U.S.C. § 706(2)(D).  The APA dictates rulemaking procedural requirements, specifically the requirement that the agency provides notice of proposed rulemaking, that the agency affords interested parties an opportunity to comment on the proposed rulemaking, and that the agency considers the relevant matters presented.  *See* 5 U.S.C. § 553.  The Medicare Act also prohibits the application of any rule or policy that establishes or changes a substantive legal standard governing the payment for service, unless it is promulgated by the Secretary by regulation.  42 U.S.C. § 1395hh(a).

111.    In the FFY 2020 IPPS Final Rule, the Secretary failed to address commenters' questions and comments regarding the exercise of his "exceptions and adjustment" authority under 42 U.S.C. § 1395ww(d)(5)(I).  In the FFY 2024 IPPS Final Rule, in response to commenters' questioning of the Secretary's statutory authority to adopt the policy, he simply referred commenters to his prior response in the FFY 2020 IPPS Final Rule.  *See* 88 Fed. Reg. at 58,980 (referring commenters to the FFY 2020 IPPS Final Rule, 84 Fed. Reg. at 42,326–42,332). It is thus not clear that the Secretary considered the commenters' relevant questions and requests concerning his invocation of that authority to reduce the IPPS standardized amount by 0.2598%

in FFY 2024 and/or to implement the Low Wage Index Redistribution.  Thus, the 0.2598%

Payment Reduction for FFY 2024 and is invalid and must be set aside.

**COUNT V:**
**Violation of the APA**
***(The Low Wage Index Redistribution is Unsupported by the Evidence in the Record)***

112.    The Hospitals repeat and reallege paragraphs 1–111 as if set forth fully herein.

113.    The Low Wage Index Redistribution first imposed in FFY 2020, and continued in

FFYs 2021, 2022, 2023, and 2024 is unlawful and must be set aside because it is unsupported by

evidence in the record.  The data on wages and wage-related costs in the record support the wage

index without the artificial adjustment of wage index values for hospitals in the lowest quartile.

The Secretary points to no evidence in the record concerning "the wages and wage-related costs

of subsection (d) hospitals" that supports the Low Wage Index Redistribution.  In addition, the

Secretary has provided no data, studies, or other substantial evidence supporting the Secretary's

conjecture that the hospitals in the low wage areas will increase employee compensation if their

wage indexes are increased.  Rather, the Redistribution itself causes the wage index values for

one-quarter of IPPS hospitals to be inaccurate through the Secretary's counterfactual, post-data

adjustment based on the hospital wages that he speculates may be paid in these labor markets in

the event wage index values are increased, without any supporting data and without any

requirement that the increased payments resulting from the increased wage index values will be

used to increase wages.

**COUNT VI:**
**Mandamus**

114.    The Hospitals repeat and reallege paragraphs 1–113 as if set forth fully herein.

115.    The Secretary has the non-discretionary duty to pay the Hospitals fully at the

amounts to which they are entitled under the law, without applying the 0.2598% Payment

Reduction, which violate the Medicare Act, and implementing regulations, and the APA.  Under

28 U.S.C. § 1361, the Hospitals are entitled to have this Court issue a writ of mandamus

requiring the Secretary to order the Hospitals' MACs to make new determinations for FFY 2024

86

to reverse the effect of applying the 0.2598% Payment Reduction and pay appropriate underpayment interest thereon pursuant to 42 U.S.C. §§ 1395oo(f)(2), 1395g(d) and/or 1395l(j), and 42 C.F.R. § 405.378.

## COUNT VII:
### All Writs Act

116.    The Hospitals repeat and reallege paragraphs 1–115 as if set forth fully herein.

117.    The Secretary's implementation of the 0.2598% Payment Reduction in FFY 2024 violated the Medicare Act and APA.  The Hospitals are entitled to their full payment under IPPS, without the 0.2598% Payment Reduction.  Under the All Writs Act, 28 U.S.C. § 1651, and other authority, the Hospitals are entitled to issuance of an order requiring the Secretary to order the Hospitals' MACs to make new determinations for FFY 2024 to reverse the effect of applying the 0.2598% Payment Reduction and pay appropriate underpayment interest thereon under 42 U.S.C. §§ 1395oo(f)(2), 1395g(d) and/or 1395l(j), and 42 C.F.R. § 405.378.

## COUNT VIII:
### Violation of the APA and Medicare Act
### *(The Self-Disallowance Regulation Impermissibly Conflicts with 42 U.S.C. §1395oo)*

118.    The Hospitals repeat and reallege paragraphs 1–117 as if set forth fully herein.

119.    The APA prohibits the Secretary from implementing the Medicare Act through actions, findings or conclusions that are in excess of statutory jurisdiction, authority, or limitations, or short of statutory right.  5 U.S.C. § 706(2)(C).

120.    The PRRB's authorizing Medicare statute, 42 U.S.C. § 1395oo, expressly entitles a hospital to appeal the Secretary's Federal Register determination if:  (1) the provider is "dissatisfied" with the Secretary's final determination, (2) the amount in controversy is met, and (3) the provider files the appeal within 180 days of the notice of the determination in the Federal Register.  *Id.* § 1395oo(a) & (b) (setting forth amount-in-controversy requirement for group appeals).  Based on this third requirement, a provider's right to appeal a Federal Register determination to the PRRB and, if successful, obtain relief cannot be dependent on self-disallowing the issue in the cost report.  This is because (1) the statute gives hospitals only 180

87

days to file an appeal from Federal Register determinations and (2) any cost report filings would not be due until <u>after</u> the Federal Register appeal was filed.

121.     That was precisely the case here.  For example, the FFY 2024 IPPS Final Rule was published in the Federal Register on August 28, 2023.  This made any appeal of the Secretary's final determinations in the FFY 2024 IPPS Final Rule due no later than late-February 2024.  In contrast, the first hospital cost-reporting periods that would include services provided during FFY 2024 would be those ending on October 31, 2023 (covering the first month of FFY 2024).  The filing for such a cost report would ordinarily not have been due until the end of March 2024, *see* 42 C.F.R. §412.34(f)(2).  Indeed, for all of the contested cost reports here, the ordinary cost report filing deadlines were multiple <u>months after the Federal Register appeal filing deadline</u> for an appeal of the FFY 2024 Final Rule.

122.     Accordingly, the PRRB's factual findings included in the FFY 2024 EJR Decision that certain Hospitals did not include "'an appropriate claim for the specific item' that is the subject of their respective group appeals, as required under 42 C.F.R. § 413.24(j)," the consequence of which is to deny any reimbursement for the item under 42 C.F.R. § 405.1873(f)(2)(ii) for the cost-reporting period, impermissibly conflicts with these Hospitals' statutory appeal rights under § 1395oo of the Medicare Act.

123.     Therefore, the Self-Disallowance Regulation and the PRRB's factual findings against those Hospitals thereon, *see ¶¶*23–24, *supra,* are invalid under the APA and must be set aside.

**<u>COUNT IX:</u>**
**Violation of the APA and the Medicare Act**
***(The Self-Disallowance Regulation and the PRRB's Findings Thereon are Arbitrary and Capricious)***

124.     The Hospitals repeat and reallege paragraphs 1–123 as if set forth fully herein.

125.     The APA prohibits the Secretary from implementing the Medicare Act through actions, findings or conclusions that are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.  5 U.S.C. § 706(2)(A).

126.    CMS's adoption of the Self-Disallowance Regulation and application of it to certain hospitals' cost years in the FFY 2024 Group Appeals is arbitrary and capricious for numerous reasons, including, for example, that each of CMS's asserted rationales for the policy has no applicability to regulatory challenges, such as the instant one, that the PRRB is powerless to correct.

127.    By way of further example, CMS's adoption of the Self-Disallowance Regulation and application of it to any Hospitals' claims in these FFY 2024 Group Appeals is arbitrary and capricious because appeals of the Secretary's final determination in the FFY 2024 IPPS Final Rule were due before any hospital cost reports covering FFY 2024 were due to be filed.  The Hospitals' cost reports at issue were not due until multiple months after the Hospitals' appeals of the FFY 2024 IPPS Final Rule were due, and multiple months after the Hospitals notified the Secretary of their dissatisfaction with the same Final Rule by timely filing their PRRB appeals from the relevant Federal Register publication.

128.    By way of further example, CMS's adoption of the Self-Disallowance Regulation and application of it to certain Hospitals' claims in their FFY 2024 Group Appeals is arbitrary and capricious because, the MAC and CMS were already on notice that those Hospitals protested the reduction in the IPPS rates made to offset the Low Wage Index Redistribution.  When those Hospitals filed the cost reports at issue, they had already explicitly protested the reduction in the IPPS rates made to offset the Low Wage Index Redistribution in their FFY 2024 Group Appeals.  Thus, both the MAC and CMS had already been notified that those Hospitals were protesting their FFY 2024 IPPS rates based on the Payment Reduction made to offset the Low Wage Index Redistribution.  Similarly, for years, and before the challenged cost reports at issue were filed, hospitals, including some plaintiffs and other hospitals, had already been litigating the reduction in the IPPS rates made to offset the Low Wage Index Redistribution before the PRRB and in court (as reflected, *e.g.*, in the *Bridgeport* and *Kaweah Delta* cases).  Thus, the Secretary was on notice that hospitals are challenging the IPPS rates based on this issue.  At a minimum, to the extent that hospitals were required to have protested the reduction in their IPPS rates made to

offset the Low Wage Index Redistribution, these Hospitals should be found to have satisfied any "substantive claim" requirement.

129.    Accordingly, CMS's adoption of the Self-Disallowance Regulation and application of it to certain Hospitals' claims in their FFY 2024 Group Appeals violates the APA and is invalid.

## **REQUEST FOR RELIEF**

WHEREFORE, the Hospitals respectfully request:

1.    An order declaring invalid and vacating the 0.2598% Payment Reduction for FFY 2024 and setting aside the portion of the FFY 2024 IPPS Final Rule that imposed the 0.2598% Payment Reduction;

2.    An order requiring the Secretary to recalculate the Hospitals' FFY 2024 IPPS payments after removing the effect of the 0.2598% Payment Reduction, and make the additional FFY 2024 IPPS payments due to the Hospitals plus interest calculated under 42 U.S.C. §§ 1395oo(f)(2), 1395g(d) and/or 1395l(j), and 42 C.F.R. § 405.378;

3.    An order declaring invalid and vacating the Secretary's Self-Disallowance Regulation and the PRRB's findings thereon in the FFY 2024 EJR Decision related to certain Hospitals which the Board has specifically found failed to include "an appropriate claim for the specific item" "as required under 42 C.F.R. § 413.24(j)(1)";

4.    Legal fees and costs of suit incurred by the Hospitals; and

5.    Such other relief as this Court deems just and proper.

Dated:  December 6, 2024                    Respectfully submitted,


                                           /s/ David J. Vernon
                                           David J. Vernon (D.C. Bar. No. 1030537)
                                           Kelly A. Carroll (D.C. Bar No. 1018485)
                                           Rachel L. Zacharias (D.C. Bar No. 1779837)
                                           HOOPER LUNDY & BOOKMAN, P.C.
                                           401 9th Street, NW, Suite 550
                                           Washington, DC 20004
                                           Tel:  (202) 580-7700
                                           E-mail: dvernon@hooperlundy.com
                                           E-mail: kcarroll@hooperlundy.com
                                           E-mail: rzacharias@hooperlundy.com


                                           Lloyd A. Bookman (Cal. Bar. No. 89251)*
                                           HOOPER, LUNDY & BOOKMAN, P.C.
                                           1875 Century Park East, Suite 1600
                                           Los Angeles, California 90067
                                           Tel:  (310) 551-8111
                                           E-mail: lbookman@hooperlundy.com

                                           *pro hac vice to be submitted

                                           *Attorneys for Plaintiffs*